DATE FILED: May 29, 2019 2:55 PM
FILING ID: A538CDDB1E613
CASE NUMBER: 2019CV30051

| | |
|---|---|
| **DISTRICT COURT, PITKIN COUNTY, COLORADO**<br>506 East Main Street<br>Aspen, CO 81611<br>(970) 925-7635 | |
| Plaintiff: **G.A. RESORT CONDOMINIUM ASSOCIATION, INC.**, a Colorado Nonprofit Corporation<br><br>vs.<br><br>Defendants: **ILG, LLC**, a Delaware limited liability company; **CHICAGO TITLE TIMESHARE LAND TRUST, INC.**, a Florida corporation, as Trustee for **HPC TRUST**; **GRAND ASPEN LODGING, LLC**, a Delaware limited liability company; **HPC DEVELOPER, LLC**, a Delaware limited liability company; **HPC OWNERS' ASSOCIATION, INC.**, a Florida non-profit; **HV GLOBAL GROUP, INC.**, a Delaware corporation; **HV GLOBAL MARKETING CORPORATION**, a Florida corporation; **HYATT CORPORATION**, a Delaware corporation; **HYATT HOTELS CORPORATION**, a Delaware corporation; **HV GLOBAL MANAGEMENT CORPORATION**, a Florida corporation; **and MARRIOTT VACATIONS WORLDWIDE CORPORATION**, a Delaware corporation<br><br>**Corrected Caption** | ▲ **COURT USE ONLY** ▲<br><br>Case Number:<br>2019CV30051<br>Div: 5<br><br>**This case is NOT subject to the simplified procedures for court action under Rule 16.1 because the Claims in the action exceed $100,000.00** |
| *Attorneys for Plaintiff:*<br><br>Tyler Meade, Esq. (*motion for pro hac vice forthcoming*)<br>Annie Decker, Esq. (*motion for pro hac vice forthcoming*)<br>**THE MEADE FIRM p.c.**<br>12 Funston Ave., Suite A<br>San Francisco, CA 94129<br>Telephone: (415) 724-9600<br>Facsimile: (415) 510-2544<br>tyler@meadefirm.com<br>annie@meadefirm.com | |

EXHIBIT A-1

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page 2 of 72

Michael J. Reiser, Esq., #16161
**REISER LAW, P.C.**
1475 N. Broadway, Suite 300
Walnut Creek, California 94596
Telephone: (925) 256-0400
Facsimile: (925) 476-0304
michael@reiserlaw.com

Matthew C. Ferguson, Esq., #25687
Michelle K. Schindler, Esq., #48076
**THE MATTHEW C FERGUSON LAW FIRM, P.C.**
119 South Spring, Suite 201
Aspen, Colorado 81611
Telephone: (970) 925-6288
Facsimile: (970) 925-2273
matt@matthewfergusonlaw.com
mschindler@matthewfergusonlaw.com

## COMPLAINT AND JURY DEMAND

Plaintiff, G.A. Resort Condominium Association, Inc. ("Association"), a Colorado nonprofit corporation, by and through undersigned counsel, states and alleges as follows for its Complaint and Jury demand against Defendants:

### INTRODUCTION

1.    Plaintiff brings this lawsuit in response to Defendants' deliberate dismantling of both the Hyatt Grand Aspen fractional timeshare program and the Hyatt Residence Club to which the Hyatt Grand Aspen belonged. Defendants did so to grab an opportunity to reap millions beyond the premium prices that Owners paid by shifting from a deed-based to a points-based timeshare program. That this shift required Defendants to breach fiduciary duties, violate

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page 3 of 72

contractual obligations, and employ fraudulent means did not deter them. Defendants proceeded

anyway, raking in huge profits at the expense of Owners at the Hyatt Grand Aspen.

2.      More than 560 Association members ("Owners") bought fractional timeshare

interests ("fractionals") at the Hyatt Grand Aspen. Purchase of a fractional came with a deed and

rights to two and half weeks a year at the Hyatt Grand Aspen, split into full and half weeks, not

single-nights. Indeed, single-night purchases were not permitted. One of the weeks was fixed—

in a particular unit at a particular time. Owners paid a premium for purchasing fractionals at the

club, gaining access to a luxury property in the heart of Aspen and at the base of Aspen Mountain.

3.      Buying a Hyatt Grand Aspen fractional also meant joining the Hyatt Residence

Club network. The Hyatt Grand Aspen was a crown jewel among the Hyatt Residence Club

resorts. An internal exchange program allowed Owners to convert some of their time to stay at

other Hyatt Residence Club resorts. A Resort Agreement affiliated the Hyatt Grand Aspen with

these other Hyatt Residence Club locations as a "component resort." Hyatt therefore convinced

Owners not only that they were buying a luxury fractional interest but also of the benefits inherent

in membership in a network of resorts. This network was supposed to be both robust and

expanding but ended up being complex to use and diminished by Defendants' wrongful conduct.

4.      Three entities—the Hyatt Grand Aspen developer (Grand Aspen Lodging), the

operator of the Hyatt Residence Club exchange program that was part of the initial offering

(HVGG), and the management company at the property (HV Global Management

Corporation)—became the Association's and Owners' fiduciaries by virtue of their near complete

control over Owners' separately deeded property interests. But rather than fulfilling their duty to

operate the Hyatt Grand Aspen and the larger Hyatt Residence Club network for the benefit of

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page 4 of 72

Owners, these entities conspired with the other Defendants to abandon the offering they sold to

Owners, and profit further at Owners' expense.

5.     Most dramatically, in 2017, Defendants[1] extracted property from the Hyatt Grand

Aspen and imposed a new, points-based program on the resort and the other resorts in the Hyatt

Residence Club. But this was not a typical program orchestrating exchanges among resorts;

Defendants created a one-sided arrangement that favored members of the new points-based

program and allowed them to reap huge profits from their breaches of fiduciary duties and other

wrongful conduct. A so-called HPC Exchange Agreement, to which no Owner consented,

allowed this new program, the Hyatt Residence Club Portfolio program ("Portfolio Club"),[2] to

exploit the Hyatt Grand Aspen and allow Portfolio Club points members to stay there at a much

lower price point, and for as little as a single night. Defendants did not attempt to obtain consent

because they knew that Plaintiff and Owners would refuse.[3]

6.     As part of the scheme to unleash their new Portfolio Club:

a.     Defendants conspired to keep about 20 percent of the fractionals at the

Hyatt Grand Aspen unsold as developer inventory; then transferred those unsold fractionals,

which fell into off-season spring and fall periods, into a trust to be used by the Portfolio Club;

and then started selling points arising from those properties as "Vacation Ownership Interests" to

---

[1] All as defined below.

[2] This club is sometimes called in governing documents the HPC Trust Club, sometimes HPC
Club, and sometimes the Hyatt Residence Club Portfolio.

[3] As used herein, the term "Owners" does not include the 200 or so fractionals wrongfully
transferred to a trust as part of the Portfolio Club, or fractionals owned by Defendants or their
officers, agents, or affiliated entities.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **5** of **72**

Portfolio Club members, translating into an estimated $30 million profit made on the backs of

Owners.

        b.     Defendants stopped expanding and instead shrank the size of the Hyatt

Residence Club in favor of selling points through the Portfolio Club. New resorts are designed

primarily for points purchasers. Owners cannot book stays if they do not have the currency of the

day, which are points, and even with points it is challenging. They also have diminished access

to intervals because Hyatt Residence Club fractionals are being transferred into the Portfolio Club

through conversions into points, developers exercising rights of first refusal on resales, transfers

of developer-owned fractionals into the Portfolio Trust, and foreclosures. These actions further

reduce Owners' chances of reserving time at the Hyatt Residence Club resorts, including at the

Hyatt Grand Aspen.

        c.     Defendants kept the number of points required to access Hyatt Grand

Aspen lower than justified to entice individuals to buy into the Portfolio Club, while increasing

points required to stay at sister clubs, and marketing the general opportunity to stay at the Hyatt

Grand Aspen to Portfolio Club members.

      7.     Defendants' misconduct has substantially harmed Plaintiff and Owners. No

rational buyer on the resale market would pay the premium prices that Owners paid when cheaper

and more flexible access can be obtained through the Portfolio Club. Related harms include but

are not limited to damage to the Hyatt Grand Aspen's reputation as a premier vacation location;

loss of inventory that Owners previously used to reserve their float week periods; loss of

inventory in the Residence Club network available for internal exchange; an increase in

maintenance costs because of greater turnover and wear and tear; market confusion; and a drying

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **6** of **72**

up of the marketplace of potential buyers. Defendants placed Hyatt Grand Aspen fractionals into a trust and subjected Owners and Plaintiff to the Portfolio Club despite advance knowledge that doing so would cause these harms.

8.      Faced with less availability at their home resorts and a diminished network of Hyatt Residence Club fractionals available for exchanges, many Residence Club members have, pursuant to the Portfolio Club sales and marketing program pushed by Defendants, converted their fractional purchases into Portfolio Club points, compounding the harm.

9.      In short, the offering for which Owners paid premium prices is no longer viable.

10.      In addition to various contractual and tort causes of action, Plaintiff brings this action for breach of fiduciary duty, constructive fraud, aiding and abetting, unjust enrichment, accounting, and statutory violations, including of the Colorado Organized Crime Control Act ("COCCA"). In addition, it would be inequitable to compel Plaintiff and Owners to remain bound to an ongoing contractual relationship with parties that have repeatedly violated their contractual and fiduciary duties, have committed fraud, and have conspired against Owners. Therefore, Plaintiff requests declaratory relief severing any further relationship between Plaintiff and Defendants, including a judicial declaration that the Management Agreement, Resort Agreement, the transfer of unsold Hyatt Grand Aspen fractionals to the Portfolio Trust, and the HPC Exchange Agreement (as it relates to the Hyatt Grand Aspen) are rescinded in their entirety, effective immediately.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over the subject matter at issue because this is a civil action for damages and/or equitable relief. Colo. Const. Art. VI, § 9(1). Jurisdiction also lies in

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page 7 of 72

this Court pursuant to C.R.S. § 13-1-124(a), (b) and (c) because this lawsuit arises from Defendants' transaction of business within Colorado and their commission of tortious acts within Colorado.

12.     Venue is proper in this Court under C.R.C.P. 98(a) and (c)(1) and (5) because this action arises from the sale of real property located in Pitkin County, Colorado; Plaintiff resides in the state; certain of Defendants can be found in the County; and certain of Defendants' wrongful and illegal conduct was committed in Pitkin County.

13.     Jurisdiction and venue are proper in this court pursuant to the terms of the uniform Purchase Contract and the majority of other relevant agreements or instruments executed in connection therewith.

## PARTIES

### A.     Plaintiff

14.     Plaintiff G.A. Resort Condominium Association, Inc. ("**Plaintiff**" or "**Association**") is a Colorado nonprofit corporation. The Association was organized for the purpose of managing the condominium and timeshare ownership plan at the Hyatt Grand Aspen known as G.A. Resort Condominiums, in accordance with the Declaration of Condominium for G.A. Resort Condominiums ("Declaration"). Plaintiff brings this suit in its own name, but also seeks damages on behalf of Owners on some causes of action pursuant to C.R.S. § 38-33.3-302(1) of the Colorado Common Interest Ownership Act.

### B.     Defendants

15.     Chicago Title Timeshare Land Trust, Inc. ("**Portfolio Trustee**") is a Florida corporation with its principal place of business at 601 Riverside Avenue, Jacksonville, Florida

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **8** of **72**

32204. The Portfolio Trustee is the trustee for the HPC Trust ("**Portfolio Trust**"), a Florida

vacation club land trust created on June 15, 2017 to receive real property from HPC Developer

to be converted to points sold in the Portfolio Club. The Portfolio Trustee received Hyatt Grand

Aspen fractionals by contribution deed from HPC Developer in June 2017, as well as other real

property that month and subsequently. The Portfolio Trustee holds legal and equitable title to

property in the Portfolio Trust for the use and benefit of the Portfolio Club Owners.

16.     Defendant **Grand Aspen Lodging, LLC** (sometimes "**Developer**" or

"**Declarant**") is a Delaware limited liability company with its principal place of business at 6262

Sunset Drive, Miami, Florida 33143. Grand Aspen Lodging is the developer of the Hyatt Grand

Aspen and a wholly owned subsidiary of Grand Aspen Holdings. Hyatt Grand Aspen was wholly

owned by Hyatt (through various subsidiaries such as Grand Aspen Lodging) until ILG acquired

Hyatt's vacation ownership operations in 2014.

17.     Defendant HPC Developer, LLC ("**HPC Developer**") is a Delaware limited

liability company with a principal place of business at 9002 San Marco Court, Orlando, Florida

32819. HPC Developer is a wholly owned subsidiary of S.O.I. Acquisition Corp., itself a wholly

owned subsidiary of ILG, LLC. HPC Developer purchased 414 biennial fractionals through a

Special Warranty Deed from Grand Aspen Lodging and transferred them to the Portfolio Trustee

in June 2017. HPC Developer created the operating plan for the Portfolio Club.

18.     Defendant HPC Owners' Association, Inc. ("**Portfolio Association**"), is a Florida

not-for-profit organization incorporated on June 15, 2017, located at 9002 San Marco Court,

Orlando, FL 32819. The Portfolio Association signed the Declaration and the HPC Exchange

Agreement that implements the Portfolio Club at the Hyatt Grand Aspen. ILG created the

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **9** of **72**

Portfolio Association as the entity responsible for managing and operating the new Portfolio Club

and properties put into the Portfolio Trust for use in that Club; the Portfolio Association assigned

those duties to HV Global Management.

19.    Defendant HV Global Group, Inc. ("**HVGG**") is a Delaware corporation, with a

principal place of business at 6262 Sunset Drive, Miami, Florida 33143. The sole shareholder of

HVGG is HTS-BC, LLC, a Delaware limited liability company, which is a wholly-owned

subsidiary of S.O.I. Acquisition Corp. HVGG independently owns and manages the Hyatt

Residence Club and, as of 2017, the HPC Exchange Program, which implements the Portfolio

Club at resorts such as Hyatt Grand Aspen. HVGG uses the Hyatt Vacation Ownership name and

other Hyatt names and marks under license from an affiliate of Hyatt Hotels Corporation.

Following Marriott Vacation Worldwide's acquisition of ILG in 2018, HVGG became an indirect

subsidiary of Marriott. HVGG was formerly known as Hyatt Residential Group, Inc. which in

turn was formerly known as Hyatt Vacation Ownership, Inc. ("HVOI"). HVOI was a party to

agreements relevant to the original purchases of Hyatt Grand Aspen fractionals, such as a contract

with the Association in 2005 called the Hyatt Vacation Club Resort Agreement.

20.    Defendant **Hyatt Corporation**, a Delaware corporation, has its principal offices

at 150 N. Riverside Plaza, Chicago, Illinois 60606. Hyatt Corporation is a subsidiary of Hyatt

Hotels Corporation. Hyatt Corporation, Hyatt Hotels Corporation, and their various subsidiaries

before the 2014 ILG acquisition are collectively referred to herein as "Hyatt."

21.    Defendant **Hyatt Hotels Corporation**, a Delaware corporation, formerly known

as Global Hyatt Corporation, has its principal executive offices at 150 North Riverside Plaza, 8th

Floor, Chicago, Illinois 60606. Hyatt Hotels Corporation has a portfolio of 14 premier brands; an

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **10** of **72**

affiliate of Hyatt Hotels Corporation licenses the Hyatt names and marks to HVGG, which owns

and manages the Hyatt Residence Club and the Portfolio Club. As of June 2018, the Corporation's

portfolio included more than 750 properties in more than 55 countries. A company form 10-K

SEC filing for fiscal year 2013 lists Aspen as a "key location."

22.     Defendant HV Global Management Corporation ("**Management Company**") is

a Florida corporation and has its principal place of business at 6262 Sunset Drive, Miami, Florida

33143. The Management Company manages and operates the Hyatt Grand Aspen property

through a management contract with the Association that has been in place since the project's

inception. The Management Company also manages and operates the Portfolio Club. The

Management Company was known as the Hyatt Residential Management Corporation between

March 2011 and October 2014, and before as the Hyatt Vacation Management Corporation

(sometimes called "HVMC"). The Management Company is a wholly-owned subsidiary of S.O.I.

Acquisitions.

23.     Defendant HV Global Marketing Corporation ("**HV Global Marketing**"), until

2014 known as Hyatt Residential Marketing Corporation and also known as Key West Vacation

Marketing Company, provides hotel and resort marketing services. HV Global Marketing is a

Florida corporation with its principal place of business at 6262 Sunset Drive, Miami, Florida,

33143. HV Global Marketing operates as a subsidiary of HVGG. It was founded in 1993.

24.     Defendant ILG, LLC ("**ILG**") is a Delaware limited liability company with its

principal place of business at 6262 Sunset Drive, Miami, Florida 33143. The acronym ILG stands

for Interval Leisure Group. Along with its parent company, subsidiaries and affiliates, ILG, when

in the form of ILG, Inc. (which status was withdrawn in November 2018), acquired the Hyatt

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **11** of **72**

Residential Group (currently known as HVGG) in October 2014. Defendant Marriott Vacations

Worldwide acquired ILG in 2018.

25.    Defendant Marriott Vacations Worldwide Corporation ("**Marriott**"), is a publicly

traded Delaware corporation with its principal place of business at 6649 Westwood Boulevard,

Suite 500, Orlando, Florida 32821. Marriott is a global vacation company that offers vacation

ownership, exchange, rental, and resort and property management, along with related businesses,

products and services. Marriott is the parent and/or an affiliate company of the other Defendants.

Marriott bought ILG for $4.7 billion in 2018. Marriott now owns, for example, HVGG (through

ILG), Grand Aspen Holding, Grand Aspen Lodging, HPC Developer, Interval Acquisition

Corporation, the Management Company, and the Portfolio Association.

26.    Collectively, these entities are sometimes referred to as "Defendants."

**C.    Members of the COCCA Enterprise Not Named as Defendants**

27.    Grand Aspen Holdings, LLC ("**Grand Aspen Holdings**") is a Delaware limited

liability company with its headquarters at 6262 Sunset Drive, Miami, Florida 33143. Grand

Aspen Holdings is a development company and a wholly owned subsidiary of S.O.I. Acquisition

Corp., and the sole member of Grand Aspen Lodging, LLC. At one point, Grand Aspen Holdings

had four members—including Grand Aspen Affiliates and HTS-Aspen, LLC. HTS-Aspen is an

indirect wholly owned subsidiary of Defendant Hyatt Hotels Corporation. In 2012, Hyatt bought

out the other partners holding interests in the fractionals.

28.    H Group Holding, Inc. ("**H Group**") was a Delaware holding company that had

its principal place of business at 71 S. Wacker Dr., Suite 4700, Chicago, Illinois 60606. H Group

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **12** of **72**

owned the Hyatt Corporation. H Group Holding's registration with the Illinois Secretary of State

was withdrawn in October 2010.

29.    Hyatt Vacation Ownership ("**HVO**") was registered as a business in 2014 in

Colorado. On the Colorado Secretary of State website, HV Global Management Corporation and

Marketing Corporation are listed as the Registrant/True Name for HVO.

30.    S.O.I. Acquisition Corporation ("**S.O.I. Acquisition**") is a Florida corporation and

was incorporated in 2014 and has its principal place of business at 6262 Sunset Drive, Miami,

Florida 33143. S.O.I. Acquisition is a subsidiary of Interval Acquisition Corp.

31.    **Interval Acquisition Corp**. is a Delaware corporation with its principal place of

business at 6262 Sunset Drive, Miami, Florida 33143, and is a wholly owned subsidiary of ILG.

32.    Collectively, Defendants and these non-party entities are sometimes called the

"COCCA Enterprise."

## GENERAL ALLEGATIONS

33.    As soon as the Hyatt Grand Aspen launched in 2005, fractionals began selling at

a rapid clip. More than 560 purchasers acquired more than 850 fractionals, mostly in the first few

years.

34.    Owners were sold on the chance to own luxury real estate in the highly desirable

city of Aspen, Colorado, at the base of Aspen Mountain. A leather-bound marketing book for the

Hyatt Grand Aspen waxed poetic about the exclusive, high-end, homelike nature of the property:

"And now, Hyatt invites you to make Aspen your second home with an elegant fractional

ownership residence located right in the heart of the city." Various amenities were touted as

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **13** of **72**

well—from an outdoor pool and hot tubs to a skating rink and plans for a bar and lounge in the

common area.

35.     Fractionals were available in undivided 1/20th fee ownership increments. These

interests gave the right to one fixed week in a dedicated unit, plus the right to reserve a full float

week and a split float week, adding up to about 10 float days. Each fractional therefore gave

rights to fewer than three weeks a year, yet the early purchasers paid top dollar to obtain what

they thought were secure rights to use and enjoy the Hyatt Grand Aspen.[4] The amount paid

generally reflected which fixed week was acquired, as some were far more desirable than others,

and the number of bedrooms, which ranged anywhere from one to four. Near the upper limit, on

December 1, 2005,[5] an Owner purchased a fractional for $412,000 with a dedicated week starting

in mid-February. Another Owner purchased two sequential fractionals at the end of the year for

$498,950 each. Prices stayed high with initial resales. For example, one Owner paid an original

purchaser more than a million dollars in March 2006 for two sequential fixed weeks.

---

[4] *See, e.g.*, the Special Warranty Deed provided to purchasers (stating that each purchaser was
obtaining an undivided 1/20 fee ownership interest per fractional, "perpetual use" of the particular
unit for the particular week purchased, plus a floating week and a floating split week); Purchase
Contract (same); Declaration § 12.16(b) (explaining the right to float weeks); *id.* § 1.5, 15.1 (noting
that the provisions of the Declaration are servitudes running with the land); Resort Agreement §
4.4, 4.6 (promising that Owners would enjoy the rights to their interests in accordance with the
deed, the Resort and Club Documents, and applicable law).

[5] A first large group of deeds was signed more than two weeks before the Declaration was
recorded on December 19, 2005. Hyatt's Lisa Trosset signed deeds on behalf of the Developer,
Grand Aspen Lodging—and continued to sign documents for Defendants over the years while
serving on the board of directors of the Hyatt Grand Aspen, as alleged herein.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **14** of **72**

36.     Despite strong initial sales, the Developer held onto approximately 20 percent of

the residential fractionals—more than 200 fractionals out of the 1060 available—and all of its ten

commercial units.

37.     Along with the 53 residential units to be sold in these 1/20th fractionals,[6] the Hyatt

Grand Aspen had commercial units. The Declaration provided to the Owners in the original

Public Offering Statement only mentioned a single commercial unit, not the 10 listed in the later

recorded Declaration. Ex. A (original Hyatt Grand Aspen Public Offering Statement). The

Management Company operates in a portion of the commercial units, and Defendants own all of

them.

38.     Buying a fractional at the Hyatt Grand Aspen translated into various vacation

opportunities—from being able to exchange time with the other Hyatt Residence Club resorts

around the country; taking advantage of an external program called Interval International; and

converting fractionals into points through the World of Hyatt Program (formerly called the Gold

Passport Program).

39.     However, Owners were led to believe that their offering would not be materially

changed, including by a new timeshare plan being merged with their own. The governing

documents discussed a single timeshare program at the Hyatt Grand Aspen. The purchase

contracts contained an implied covenant of good faith and fair dealing that the seller would sell

a sufficient number of fractionals to make the offering viable, and would not act in a manner so

---

[6] The Developer also converted larger residential units into smaller ones, increasing the number
of units from the original 50 to 53.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **15** of **72**

as to undermine the essential benefits of the contract, such as by transferring its unsold fractionals

to a land trust for use by others who paid far less for the privilege of use.

### A.   Defendants Created the Portfolio Club and Imposed It on the Hyatt Grand Aspen

40.     ILG acquired the Hyatt Residence Club and the Developer's inventory of more than

200 unsold fractionals as part of a $190 million deal with Hyatt in October 2014.[7] On information

and belief, in the months leading up to this acquisition, ILG persuaded Hyatt not to sell this unsold

inventory because ILG wanted unsold fractional inventory that it could transfer to a land trust and

use to sell points.

41.     ILG valued the Hyatt Grand Aspen fractionals not only as a place to send members

of a new points-based program but also because they would provide a so-called "halo" effect for

any new program. The halo effect means that dangling the possibility of staying at the luxurious

Hyatt Grand Aspen would allow the points program to sell more points to more members and at

higher prices.

42.     While both Hyatt and ILG promised that after the acquisition "owners will continue

to receive all privileges currently associated with their membership," ILG's priority was clear:

points-based profit through the Portfolio Club. An ILG staffing announcement in 2016, for

example, described the Hyatt Residence Club as "a flexible points-based program with more than

30,000 members who have access to 16 HRC resorts," not even mentioning the fractional owners.

---

[7] An ILG subsidiary, S.O.I. Acquisitions, obtained an exclusive license to use the Hyatt brand in
connection with the shared ownership business.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **16** of **72**

43.     As with Hyatt before it, ILG made no real effort to sell the remaining developer fractionals. Indeed, on information and belief, both Hyatt and ILG actively thwarted efforts by brokers to sell fractionals, even those whom they had hired and who had a sales space at the Hyatt Grand Aspen. A business center now occupies the former sales space at the Hyatt Grand Aspen. Owners also were thwarted for a long time by Defendants from using a website that a Hyatt Grand Aspen fractional owner designed to allow them to seek additional time from, or swap fractionals with or rent fractionals to other Aspen Owners. Defendants did not want Owners to have this independence.

44.     ILG's next step was designing and implementing the Portfolio Club—the new, points-based program that was foisted onto the Residence Club resorts. This plot proceeded in several steps, along with the roll-out of new agreements, documents, and entities.

## 1.     The Portfolio Club Offering Plan and Related Documents

45.     The operating document for the Portfolio Club and its exchange programs, called the HPC Vacation Ownership Plan Ownership Information ("HPC Plan"), runs 358 pages, with various parts, and is nearly incomprehensible without substantial scrutiny and background knowledge about how timeshares work. A version of this document dated April 2018 was eventually provided, on demand, at the end of 2018 to an independent member of the Hyatt Grand Aspen board of directors.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **17** of **72**

46.     This massive document includes an HPC Vacation Ownership Plan Multisite Public

Offering Statement, which was almost 50 pages and had almost 150 pages of exhibits;[8] a

management agreement for the HPC Vacation Ownership Plan, through which the Trust

Association assigned its duties to HV Global Management; an HVGG Exchange Program

Disclosure Guide; and a Club to Club Exchange Agreement (the "HPC Exchange Agreement"),

which is the document that affiliated the HPC Vacation Ownership Plan with the Hyatt Residence

Club network, including the Hyatt Grand Aspen. Ex. B (HPC Public Offering Statement).

47.     Members of the Portfolio Club receive a deed conveying a Vacation Ownership

Interest in a Trust Association. Unlike at the Hyatt Grand Aspen, these members do not directly

own a specific interest in any single unit; instead, they joined a multisite timeshare plan. An HPC

Vacation Ownership Plan Colorado Disclosure Statement that HPC Developer submitted to

Colorado in 2017 explained some of the mechanics, describing the alchemy of committing

properties into the trust and emerging with interests that gave use rights in the property and

ownership in a trust association. Ex. C (HPC Developer Colorado Disclosure Document). The

document also noted that exchanges with the Hyatt Residence Club would be "based on a

---

[8] To give a sense of the complexity, Exhibit 1 to the offering statement was the HPC Vacation
Trust Agreement, which had, as its own exhibits, the Articles of Incorporation of HPC Owners
Association, Inc., the Bylaws for the HPC Owners Association, Inc., the Declaration of Vacation
Ownership Plan for HPC Club, and the Trustee Fee Compensation Schedule. Exhibit 2 was the
"Reservation Rules and Regulations for the HPC Club Vacation Ownership Plan," which had, as
its own exhibits, a Club Fee and Transaction Fee Chart and a Membership Tier Level Chart.
Exhibit 3 was a Trust Association Multisite Timeshare Plan Budget. Exhibit 4 was a Receipt for
Timeshare Documents. Exhibit 5 was a Description of Exhibits Not Delivered to Purchasers.
Exhibit 6 was the Rules and Regulations of the HPC Vacation Ownership Plan. Exhibit 7 was a
Tabular Description of Component Sites. Finally, Exhibit 8 was a Tabular Description of
Component Site Recreational Facilities.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **18** of **72**

conversion ratio that establishes the number of HPC Points as compared to the number of Hyatt

Residence Club Points . . . which conversion ratio is determined by HVGG in its sole discretion. .

. . There are no other limitations based on seasonality, unit size or levels of occupancy."

48.    Owners of Vacation Ownership interests pay annual assessments and club dues.

49.    The Public Offering Statement contained in the HPC Plan makes clear that HVGG

had the power to run the new reservation system and decide how Residence Club members'

interests can be converted into points to be used in the plan.

50.    The HPC Exchange Agreement included in the HPC Plan was dated June 15, 2017.

Through this document, HVGG, as program manager of the Hyatt Residence Club, entered into an

agreement with the new entity initially managing the Portfolio Club, the Portfolio Association

(HPC Owners' Association). The HPC Exchange Agreement establishes ground rules for

managing the relationships between these programs.

51.    The HPC Exchange Agreement gives, for example, Portfolio Club members rights

to Portfolio Trust inventory at Hyatt Residence Club properties—including for stays as short as a

single night. Under this agreement, an Owner who is also a member of the Portfolio Club may

convert his or her fractionals into Portfolio Club points for a given year—but HVGG decides who

is eligible to do so. Pursuant to this agreement, HVGG also coordinates the inventory shared by

the clubs, in essence thwarting original Hyatt Grand Aspen legacy owners from reserving prime

interval usage dates.

52.    The HPC Exchange Agreement permits Portfolio Club members to convert their

points into so-called legacy points and to use those points to reserve time in the Hyatt Grand Aspen

float week periods that previously had only been available to Hyatt Residence Club members.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **19** of **72**

53.     The Management Agreement was also dated June 15, 2017, that transferred the

HPC Owners' Association's duties to manage the Portfolio Club  to HV Global Management—

the same management company supposedly managing the Hyatt Grand Aspen in good faith.

>    *2.     The Transfer of 20 Percent of Hyatt Grand Aspen's Fractionals into the*
>    *Portfolio Trust Dedicated to the Portfolio Club*

54.     In 2017, ILG took formal steps to force the merger of the Portfolio Club with the

Hyatt Residence Club, and the Hyatt Grand Aspen in particular. With no press release or other

notice, ILG entered into a series of contracts that prop up the Portfolio Club by exploiting Hyatt

Grand Aspen fractionals. These documents included a trust agreement, a Declaration, and a deed

of sale excising the Developer's fractionals from Hyatt Grand Aspen.

55.     On June 15, 2017,  the Portfolio Trust and HPC Owners' Association entered into

an HPC Trust Agreement, recorded on June 23, 2017, that established the Trust. They

simultaneously recorded a Declaration.

56.     That same day, the Developer sold its inventory of Hyatt Grand Aspen fractionals

to another ILG subsidiary, the HPC Developer, for $10,003,854.

57.     Lisa Trosset, a Hyatt and ILG executive, was on the Association board at the time

owing a fiduciary duty to the Board and the Owners. She signed the Special Warranty Deed on the

Developer's behalf and many other documents relating to the creation of the Trust, HPC

Developer, and the transfers.[9] Incredibly, Trosset never advised the other Association board

members or Owners about this act, the Portfolio Club, or the use of the Hyatt Grand Aspen

---

[9] For example, she signed and submitted an Application for Initial Registration and Certification
as a Subdivision Developer (for the Year 2017) for HPC Developer, to the Colorado Department
of Regulatory Agencies in order to operate the Vacation Ownership Plan.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **20** of **72**

fractionals in that program. None of the Board minutes from this or any other period mention the developer intervals being transferred, the creation of the Portfolio Trust, or the rollout of the Portfolio Club and the affiliation of it with the Residence Club through the HPC Exchange Agreement.

58.     Soon after, at the end of June 2017, the HPC Developer laid the contractual groundwork for the new points-based Portfolio Club, including by placing those Hyatt Grand Aspen fractionals into the Portfolio Trust through a contribution deed. Ex. H (Contribution Deed). Defendants converted the Hyatt Grand Aspen fractionals from $1/20^{th}$ fee ownership interests into $1/40^{th}$ fee ownership interests, increasing them from 207 to 414 fractionals because the latter was better suited to the new Portfolio Club.

59.     On June 30, 2017, through a "Trust Developer's Notice of Addition and Notice of Activation of Trust Property to HPC Trust (Grand Aspen-Timeshare Interests)," the HPC Developer effectuated the contribution of the Aspen fractionals to the Portfolio Trust and "activated" them for use by the Vacation Ownership Plan.[10] Ex. I (HPC Developer records, p. 84).

60.     Through these steps, ILG gained 2,075,900 points from the Grand Aspen Hyatt fractionals to sell through the Portfolio Club.

61.     These 207—now 414—fractionals constituted a substantial portion of the property at the Hyatt Grand Aspen and are now dedicated to the use of thousands of Portfolio Club points members.

---

[10] The Portfolio Club's multisite offering statement required this step; without it, the properties in the trust that had not yet been activated were not yet part of the Portfolio Club.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **21** of **72**

62.       Ten additional sets of intervals, primarily in Florida and Texas, that had been
contributed to the Portfolio Trust were "activated" on the same day as the Hyatt Grand Aspen
fractionals. Trosset signed all of the conveyances into the Portfolio Trust that year as Vice
President of HPC Developer—again, while serving simultaneously on the Hyatt Grand Aspen
board.

63.       Despite all this activity, based on months or years of planning, no notice was given
to Hyatt Grand Aspen Owners or the Association.

### 3.       Revised Hyatt Residence Club Rules

64.       In early 2017, HVGG revised and released a new version of the Hyatt Residence
Club Rules and Regulations ("2017 Club Rules"). Ex. D (2017 Club Rules). The Club Rules
provide specific rules and regulations for the Residence Club program as a whole. A version had
been included in the Public Offering Statement that Owners who bought from the Developer
received, and perhaps other purchasers as well. *See* original Hyatt Grand Aspen Public Offering
Statement. The email providing the 2017 revisions from the Hyatt Residence Club merely stated:
"2017 Club Rules Now Available! As we head into 2017, we are pleased to provide you with the
2017 Hyatt Residence Club Rules along with updated Resort Seasons Calendar and Club Points
Charts." An Owner asked HVGG what changes had been made and was told that merely the points
system at two other resorts had been affected.

65.       Despite that upbeat, single-line email, which lulled and mislead Owners into
thinking that nothing had changed, and certainly nothing meaningful, the 2017 version
dramatically changed the document. The 2017 Club Rules:

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **22** of **72**

        a.     Buried an announcement of the imposition of the new Portfolio Club on pages 24 to 25 of the 28-page single-spaced document, calling it the "Hyatt Residence Club External Exchange Program." § 5.2.[11]

        b.     Materially expanded HVGG's powers to associate the Club with other vacation ownership plans, basically and unlawfully purporting to give carte blanche permission for the merger of the Portfolio Club with the Residence Club. § 5.2(b).

        c.     Declared that the "[Portfolio] Association, HVGG, and their respective subsidiaries and affiliates are separate and distinct entities," and purported to limit responsibility for representations about the fate of the Residence Club "to those made in written materials furnished by Hyatt Residence Club." *Id.* § 5.2(b).

        d.     Placed additional complex restrictions on Owners' ability to reserve float weeks during certain time periods. *See* § 3.2(a)-(c)(2). At the same time, the 2017 Club Rules gave HVGG new powers over reservations, including to obtain priority for itself on request lists and waitlists, to the detriment of Owners and others. *See* § 5.3(c).

        ***4.     Belated Developer "Approval" of the Portfolio Club Having Grabbed Hyatt Grand Aspen Fractionals***

    66.     More than a year later, the Developer acted to retroactively "approve" the HPC Developer's addition of Hyatt Grand Aspen fractionals into the Portfolio Club. This instrument was recorded on September 20, 2018. Ex. E (HPC Developer Approval).

---

[11] The use of the term "external" to describe the merger seems unique to this document. Defendants possibly included it in this document to try to twist the new program into conformity with the permission granted in the governing documents to add "external exchange programs" to the Residence Club.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **23** of **72**

67.     The version of the Hyatt Grand Aspen Declaration that the Developer included in
the Public Offering Statement as part of the purchase documents was dated 2004. Yet, as part of
this 2018 approval, the Developer invoked a paragraph that had been inserted into Declaration
revised and recorded in 2005 without Owners' knowledge. Ex. F (2005 Recorded Hyatt Grand
Aspen Declaration). The Developer did not provide the revised and recorded Declaration, which
contained additional meaningful changes, to many purchasers after it was recorded.

68.     The new paragraph added to Article XVIII of the recorded Declaration begins with
what appears to be protective language favorable to Plaintiff and Owners, but then purports to
open the door to significant changes made or approved by the Developer (Grand Aspen Lodging).
It reads as follows:

> No timeshare plans, fractional plans, exchange programs or clubs, or travel or vacation
> clubs comprised of a trust, corporation, cooperative, limited liability company,
> partnership, equity plan, non-equity plan, membership program, or any such other similar
> programs, structures, schemes, devices or plans of any kind (a) *shall be created,*
> *established, operated or maintained with respect to the Property or the Timeshare*
> *Interests,* (b) shall *acquire* or accommodate the Units or *Timeshare Interests,* and (c) shall
> be permitted to *incorporate a Timeshare Interest* into such entity, program, structure,
> scheme, device or plan, except by the *Declarant* or except with the *prior written*
> *authorization from the Declarant,* which authorization may be given or withheld in the
> Declarant's sole and absolute discretion, *and which authorization shall be evidenced by*
> *a written instrument executed by the Declarant, recorded in the Records, and containing*
> *a reference to this Declaration and this section.* [Emphases added]

69.     Even if binding—*see* the Fifth Cause of Action *infra*—this provision does not aid
Defendants, because the 2018 retroactive Developer "approval" itself was ineffective, occurring
long after the fractionals were "activated" in June 2017 to be used by the Portfolio Club.

70.     Additionally, the new paragraph does not provide authority for the transfer of the
intervals or for imposing a new program on the property. Instead, the paragraph merely requires

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **24** of **72**

that, if such authority exists, and if a new program sought to absorb Hyatt Grand Aspen interests,

the Developer would have to give its approval. In other words, this paragraph merely specifies a

final step of Developer approval, all other requirements being satisfied, ensuring that the

Developer had proprietary control over the uses of the property.

71.    Finally, the Developer's 2018 "approval" did not seek to authorize the second step

in Defendants' June 2017 scheme relating to the Hyatt Grand Aspen, which was the HPC

Developer's transfer of the Hyatt Grand Aspen fractionals into the Portfolio Trust by contribution

deed. (The Developer took the first step when it sold its Hyatt Grand Aspen fractionals to the

HPC Developer.) Instead, the Developer only "approved" the third step: the inclusion of the Hyatt

Grand Aspen fractionals, already in the Portfolio Trust, into the Portfolio Club program. The

added paragraph in Article XVIII of the recorded Declaration, however, clearly required the

Developer to specifically authorize the second step contributing the fractionals to the Portfolio

Trust. It stated that: "No . . . plans of any kind . . . (b) *shall acquire . . . the . . . Timeshare Interests*,

. . . except by the Declarant or except with the *prior* written authorization from the Declarant . . .

." (emphases added). Neither of those conditions was met. Therefore, HPC Developer's June

2017 transfer of fractionals to the Portfolio Trust through the contribution deed was never

properly authorized.

72.    In combination with and in addition to the other allegations made herein, this

invalidity requires an injunction prohibiting the Portfolio Club from using its Hyatt Grand Aspen

fractionals and requires rescission of the sale of fractionals to the Portfolio Trust.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **25** of **72**

73.     ILG continues to add fractionals from other Residence Club resorts to the Portfolio

Trust through purchases, exercising rights of first refusal, foreclosures, and conversions (through

which Residence Club owners convert their fractional interests into points).

### 5.     *Admissions During Sales Presentations for the Portfolio Club*

74.     A sales pitch for the Portfolio Club in January 2018 at a sales center in Bonita

Springs, Florida, confirmed that the Portfolio Club was ILG's new priority. ILG spent significant

resources on the venue—a large office, open cubicles for the presentation, money given to

attendees to eat dinner at a local Hyatt, mockups of new buildings, and more. The presentation

confirmed that ILG is *deliberately* diminishing, indeed destroying, the legacy Hyatt Residence

Club by stripping it of fractionals. In its place, ILG is funneling its efforts and resources into

building up the points-based Portfolio Club.

75.     The presenters at the sale pitch included a sales executive, a sales manager, and the

Director of Sales and Marketing. One admitted that the Residence Club model was not working.

She also noted that the Hyatt Grand Aspen is a fish out of water, as a very high-end property within

the Hyatt Residence Club. Another admitted that "astute people can see the way it is going," and,

perhaps most shockingly, stated that sales representatives are told to avoid using the "D" words—

depleting, diminishing, and so on—to describe plans for the legacy Hyatt Residence Club program.

The third presenter similarly called the Hyatt Residence Club a diminishing club, with the Portfolio

Club as ILG's new direction. The handouts conceded that fractionals are no longer being sold at

the Residence Club.

76.     Similar sales pitches have been made around the country, containing both frank and

misleading information.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **26** of **72**

> **B.    Grand Aspen Lodging (the developer), HVGG (operator of the exchange program), and HV Global Management Corporation (the management company) Owed Fiduciary Duties**

77.    Owners purchased their fractionals having faith in Hyatt's reputation for high-quality, customer-centric standards and fair dealing. Thereafter, Plaintiff and Owners were protected by the fiduciary duties owed by the developer (Grand Aspen Lodging), the operator (HVGG) of the internal exchange program, and the Management Company (HV Global Management Corporation) at the Hyatt Grand Aspen. Specifically:

a.    The Management Company, HV Global Management Corporation, became a fiduciary under agency principles when the Association assigned all of its powers and duties to it in a management contract. *See* Condominium Association Management Contract ("Management Agreement"),[12] § 6. Ex. G (Hyatt Grand Aspen Management Agreement as provided in 2009). These delegated duties include by operation of the law the Association's fiduciary duties to Owners. The Management Company additionally assumed fiduciary duties to Plaintiff and Owners by exercising a high degree of control over operations at the Hyatt Grand Aspen and Owners' separately deeded property interests. This Management Agreement has been renewed automatically over the years, most recently in March 2019.

---

[12] Ed Crovo, a director on the Association board and its Secretary and Treasurer, signed the Management Agreement for the Association; Crovo was at the time the Vice President of Operations for Hyatt. John Burlingame, another Hyatt Vice President, signed the agreement for the Management Company. Both Crovo and Burlingame served Hyatt in management positions for years, including Crovo as Chief Operating Officer of Hyatt Vacation Ownership.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **27** of **72**

      b.     HVGG became a fiduciary to Plaintiff and Owners as the program

manager, controlling, for example, the complex reservations systems that Owners use to access

their allotted time at the Hyatt Grand Aspen and exchanges with other Hyatt Residence Club

resorts, and controlling the number of points allocated to Hyatt Grand Aspen fractionals that

Owners could convert into time at other properties. Hyatt Vacation Club Resort Agreement

("Resort Agreement"),[13] p.1, § 2.2, § 3.1(a), § 3.2(a), § 5.1. *See* Ex. F, 2005 Recorded Declaration

Exhibit B (Resort Agreement). In addition, Defendants gave HVGG the power via the Resort

Agreement to reject any other management company retained by the Association. *Id.* at § 4.6.

HVGG had to make decisions in "good faith." Resort Agreement, § 6.3.

      c.     The Developer became a fiduciary by creating and exercising control over

the Hyatt Grand Aspen in various ways. The Developer (i) wielded formal control over the board

until 2012, Declaration § 9.7; (ii) inserted provisions into the Declaration that gave it perpetual

powers, such as the right to amend the document unilaterally, while restricting the Owners'

powers, § 16.2, and power gained by retaining ten commercial units, § 16.1(c); (iii) gave itself

broad powers over implementing the Hyatt Residence Club program at the Hyatt Grand Aspen,

*id.* Art. XVIII; and (iv) exercised voting power at the property by retaining and indeed thwarting

the sale of 20 percent of the residential fractionals.

      d.     The Colorado Disclosure Document included in the Public Offering

Statement for the Hyatt Grand Aspen affirmed that the Developer could not, for example, profit

---

[13] Once again, Ed Crovo, a Hyatt executive, signed for the Association, and Burlingame signed
for Hyatt. David Parker signed for the Developer; Parker also was serving as a director on the
Association board.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **28** of **72**

from its relationship with the Association—a basic rule for a fiduciary. *See, e.g.*, Colorado
Disclosure Document, p. 6.

78.    Despite these fiduciary obligations, Defendants imposed the Portfolio Club and
all of its attendant harm on Plaintiff and Owners without any opportunity to object. Perhaps most
egregiously, the Management Company, Developer, and HVGG—the Plaintiff's and Owners'
fiduciaries—knew that the Portfolio Club was coming and then that it had been implemented,
built on a substantial foundation of Hyatt Grand Aspen fractionals, and withheld that the
information from the Plaintiff and Owners.

79.    Indeed, Defendants have actively participated in the implementation. For example,
the Management Company has facilitated the integration of the two timeshare plans at the Hyatt
Grand Aspen, including by serving as the management company for both properties; the Developer
sold its fractionals to the HPC Developer, which went straight into the Portfolio Trust, and then
later retroactively "approved" the Trust's use of the fractionals; and HVGG orchestrates key
aspects of the Portfolio Club's rollout.

80.    Well after implementation, Owners had to hound Defendants and their hand-picked
board members for meaningful information—which they still did not receive. As one Owner, now
a member of the independent board of directors, wrote in a letter sent to all members in October
2018: "Last year, I made a request to the ILG representative to tell us how the new Trust used their
float weeks and what weeks they did secure. I also repeatedly asked our Board to find this out.
This information has never been provided." One board member responded on December 20, 2017,
to an Owner inquiry stating that it was "premature" for the board to let Owners know about whether
the developer fractionals, which Owners had been using for years for float weeks reservations,

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **29** of **72**

would still be available. It was not until mid-February 2018 that Mike Kinnett, the VP of

Operations for HVO, emailed Hyatt Grand Aspen Owners to say because the developer's

fractionals had been "transferred into a trust associated with the HRC Portfolio Program . . . we

are unable to continue the program." That statement of course only told part of the story, and was

misleading.

81.     Defendants have continued to withhold the HPC Exchange Agreement from the

Owners. In December 2018, one director on the board demanded and received the Portfolio Club's

offering documents. Even as late as January 2019, a new member of the Association board

demanded documents underlying the Portfolio Club from Defendants at a meeting in Orlando—

and never received them. The Defendants to this date have never sent the Portfolio Club documents

to the Owners.

### C.     The Fiduciaries and Related Entities Committed Additional Bad Acts

82.     Defendants took additional actions that undermined the Hyatt Grand Aspen

fractional program while preparing the soil for the points-based Portfolio Club to take root to

Owners' detriment. Some of the more egregious wrongful conduct follows.

83.     Defendants blocked Owners' efforts to find alternative ways to sell or rent their

fractionals and efforts to purchase Developer's intervals.

84.     The Developer and related entities refused to sell its final 200-plus fractionals,

thereby retaining control at the Hyatt Grand Aspen and causing its loss in viability. As part of

this control, the Developer used its voting rights to block the election of a truly independent

board. Despite repeated efforts over the years, including prominently in 2015, such a board was

not elected until the end of 2018—after the independent candidates that year made a massive and

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **30** of **72**

concerted outreach to Owners, and after the harmful effects of the Portfolio Club became known.

The Developer also held onto its commercial units, retaining a seat on the board pursuant the

provisions it had inserted into the Declaration and diluting the power of the Owners and Plaintiff.

85.     To take advantage of the Hyatt Grand Aspen's allure, while profiting from the

points program, HVGG allocated fewer points to the Hyatt Grand Aspen than it deserves to draw

in new points members. HVGG effectively devalued the Hyatt Grand Aspen by increasing the

number of points allocated to other luxury properties, such as that in Carmel, California. As one

Owner noted, that the property is "Hyatt's ticket to selling more of their low-end properties. They

advertise, 'Buy in Key West, stay in Aspen'! Hyatt makes the money on sales and we pay for it."

86.     To make matters worse, Defendants, and HVGG in particular, designed a

reservation system that permits the Portfolio Club to reserve prime spots ahead of Owners. As

Owners learned in December 2018, Defendants jumped the early January line for reserving float

time in the desirable winter and summer seasons.[14] And Defendants are reserving a

disproportionately low amount of float time during the least desirable times to be in Aspen. These

periods are called "Mountain" weeks, which constitute the so-called mud season (about six weeks

_____

[14] On information and belief, Hyatt Grand Aspen owners were deprived of their rights to reserve
during the HRPP Float Reservation window that opened at 11 a.m. Eastern Standard Time on
January 5, 2019. The system crashed, with "Error 99" messages and outages across the owner
universe. Many owners were unable to reserve the times they had queued up. On information and
belief, the Trust was able, in contrast, to reserve all or most of its slots, and in the most desirable
time periods. Michael Kinnett, VP of Operations for Hyatt Vacation Management, wrote an Owner
the previous year, on January 14, 2018, misrepresenting the process the Trust used, stating that
"the trust must wait until the reservation window is opened and utilize the same reservation
methods as all other owners," when, instead, on information and belief, the Trust instead used a
computer program to make its reservations.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **31** of **72**

in April and May) and the weeks after the leaves have changed color (about six weeks in October

and November). Defendants are managing to reserve almost 100% of the float time associated with

fractionals in the Portfolio Trust, while Owners manage to use only about 60% of their float time.

An Owner was told that Hyatt was "the only one to get 3 bedrooms on points and would have first

crack before splitting them up."

87.    Defendants also failed to provide material and/or updated documents to Owners

over the years; these failures helped perpetuate Defendants' scheme because Owners were

operating in the dark. For example:

a.    Defendants did not provide in some purchase documents the Management

Agreement, or Resort Agreement that affiliates the Grand Aspen Hyatt with the Residence Club.

This failure was particularly egregious given that section 1.2 of the Resort Agreement asserts that

by buying a unit at the Hyatt Grand Aspen, owners were consenting to the terms of the Resort

Agreement—a term that in this context is unconscionable. The Resort Agreement was recorded

in Pitkin County on December 19, 2005—after many of the initial sales at the Club.

b.    Defendants updated the Public Offering Statement offered to purchasers

of Developer fractionals, but they did not replace the draft, unrecorded Declaration with the

recorded version, even though the recorded version included material changes, including

requiring Developer approval for certain uses of Hyatt Grand Aspen fractionals.

c.    Defendants never updated the Resort Agreement, even though that

relationship was materially changed by the imposition of the Portfolio Club on the Hyatt

Residence Club.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **32** of **72**

    d.  Early Owners were given a purchase contract that referred to a Hyatt

Vacation Club Exchange Program Disclosure Guide, and the Public Offering Statement that they

received listed that guide on its table of contents, but no such guide was included.

  **D.**  **The Harm Has Continued Following Marriott's Acquisition of ILG**

  88.  Marriott Vacations Worldwide acquired ILG in September 2018. Marriott has

supported and profited from the Portfolio Club and the ongoing diminishment of the Hyatt

Residence Club. As a signal of its priorities, Marriott's 2018 10-K only mentions the Hyatt

Residence Club program as part of its overall push toward points-based programs: "We sell the

majority of our products through points-based ownership programs, including . . . the Hyatt

Residence Club Portfolio Program."

  89.  Defendants are diminishing the Residence Club inventory while building up the

Portfolio Club. While they build new resorts and expand existing resorts with property dedicated

to use by Portfolio Club members, they deny access to those resorts to non-members, decline to

build new Hyatt Residence Club resorts, and take every opportunity to transfer additional

fractionals to the Portfolio Club, e.g., through conversions, by exercising right of first refusals and

through foreclosures and transferring acquired fractionals to the Portfolio Trust.

  **E.**  **Defendants Continue To Profit from the Wrongful Conduct**

  90.  The Hyatt, ILG, and Marriott Defendants all profited by exploiting the Hyatt Grand

Aspen to benefit the Portfolio Club. Hyatt enabled this entire scheme by making a calculated

decision not to sell all of its fractional inventory. When Hyatt sold its vacation ownership

operations to ILG in 2014, including the Hyatt Residence Club and Grand Aspen Lodging, it

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **33** of **72**

commanded a higher price because the unsold fractionals gave ILG much needed inventory for the
Portfolio Club.

91.    ILG paid approximately $10 million for the developer fractionals, and then
transferred those fractionals to the Portfolio Trust. The Aspen fractionals constitute a substantial
portion of the property in the Portfolio Trust. Using the properties in the Portfolio Trust, HPC
Developer has sold thousands of "Vacation Ownership Interest Special Warranty Deeds" granting
points-based Portfolio Club timeshare interests. These points have use rights associated with them,
allowing points owners to book Portfolio Club inventory, including Hyatt Grand Aspen intervals,
and also allowing them to convert Portfolio Club points to legacy points, which means having
currency for Aspen intervals not in the Portfolio Club inventory. Unlike the Hyatt Grand Aspen
deeds, these deeds do not provide rights to any particular resorts or any particular weeks.

92.    About 2 million Portfolio Club points are allocated to those Aspen fractionals. Each
point is selling for $20. Therefore, the Hyatt Grand Aspen fractionals have translated, or will
translate, into a total of $40 million in point sales, and a profit of $30 million.

**F.    Defendants' Wrongful Conduct Continues To Cause Serious Harm to
Owners' Interests**

93.    As a result of Defendants' unlawful actions, Owners and Plaintiff have suffered
serious harm, including the following:

a.    The value of Owners' fractionals has plummeted, stayed depressed, and
cannot recover. Although Aspen generally hit a low during the recession, values once again have

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **34** of **72**

increased substantially in the city, including at other Aspen fractional resorts.[15] The Hyatt Grand

Aspen values have not risen proportionately. For example, the yearly average of fractionals sold

after 2011 has been anywhere between 24.6 and 52.8 percent below the original purchase price,

while values of Aspen properties since 2011 has been far more robust, including for other

fractionals in the area where violations such as those here have not taken place.

        b.      Fewer Residence Club fractionals are available for Owners to reserve float

weeks.

        c.      When Owners cancel their float weeks at the Hyatt Grand Aspen, the

canceled weeks go into the Portfolio Club, no longer available to Owners—diminishing their

inventory.

        d.      Owners must spend more money on points to exchange with other

locations than is justified.

        e.      Wear and tear and resulting costs have increased because of higher

turnover in units, because, the Portfolio Club allows for one- or two-day stays, which is not

permitted under the Hyatt Residence Club exchanges, and also because each time a member of

the Portfolio Club stays at the Hyatt Grand Aspen, the Hyatt Grand Aspen receives a fee that is

---

[15] Even in 2011, the Wall Street Journal called Aspen "The Most Expensive Town in America,"
with a subtitle stating: "Defying the national housing slump, Aspen's prices are rising."
https://www.wsj.com/articles/SB10001424052748703775704576162553297928260.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **35** of **72**

at most a fourth of the amount it takes to clean that unit. Marriott has acknowledged that increased

fees can harm owners. [16]

   f.  Additional difficulties and deliberate complexities in reserving float times;

   g.  The marketplace has been muddied in that potential purchasers cannot

understand the system and confuse the different products; [17] and

   h.  Hyatt Grand Aspen's reputation as a premier vacation location and as part

of a robust club network has become tattered.

   i.  Other Residence Club properties have not provided "the same level of

service, location and overall vacation experience" as the Hyatt Grand Aspen. Similarly, Interval

International properties are less pleasant than anticipated. Even navigating the procedures for

using the exchange programs has been challenging for years, and are only more so now. [18]

   j.  Fees and costs imposed on Owners remain unacceptably high, affecting

property values. For example, Hyatt inserted an above-market 15 percent management fee in the

original Management Agreement. Housekeeping costs and other expenses are high and increasing

due to the influx of Portfolio Club members.

---

[16] *See* Marriott's SEC Form 10-Q (for the quarterly period ending September 30, 2018) ("If maintenance fees at our resorts are required to be increased, our products could become less attractive and our business could be harmed. . . . .").

[17] The Portfolio Program also diminished the value of the "legacy" club by allowing legacy fractional owners to purchase points in the Portfolio Program, and combine the point value of the legacy fractional with the purchased points. As a result, a person, say, who owns a one-bedroom unit who wants more space could use points and combine the two.

[18] The World of Hyatt program at least has offered a last-ditch way to monetize the Hyatt Grand Aspen investment when reserving float weeks has proven impossible.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **36** of **72**

      k.     The Association was left virtually powerless to act because of the onerous

Management and Resort Agreements,[19] and, constricted by the commercial units, which gave the

Developer both board seats and board presence, thus eliminating any confidentiality of and among

non-Developer board members. Both of these facts left the Association and Owners hostage to

Defendants' illicit plans and profits, Defendants' systematic dismantling of the program, and the

continued devaluation of their properties.

      94.     Defendants have continued to be complicit in the violations alleged here by

allowing the Hyatt Grand Aspen to be operated for the benefit of the competing Portfolio Club.

      95.     At all times relevant herein, Defendants, and each of them, were "conscious

wrongdoers" within the meaning of Restatement (Third) of Restitution and Unjust Enrichment §§

43, 51-53, or knowingly aided and abetted one or more other defendants who so qualify.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Breach of Fiduciary Duty)**

**(Against HV Global Management, Grand Aspen Lodging, and HVGG)**

      96.     The Plaintiff incorporates by reference the allegations contained in the preceding

and subsequent paragraphs as if fully set forth in this cause of action.

      97.     From 2005 until the present, HV Global Management (the management company

for the Association), Grand Aspen Lodging (the developer and declarant), and HVGG (the owner

and operator of the Hyatt Residence Club program) owed fiduciary duties to Owners and the

---

[19] For example and as noted, the Resort Agreement gives HVGG the power to reject any
management company retained by the Association. Resort Agreement § 4.6.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **37** of **72**

Plaintiff, including the duties of loyalty and full-disclosure. These fiduciary duties arose from the special relationships recognized by the law among the parties under both agency and control principles.[20]

98.    These Defendants breached their fiduciary duties through a long-standing pattern and practice of self-dealing. The following are among the breaches of fiduciary duty more fully alleged elsewhere herein: They ran the affairs of the Association for their own benefit. They made critical, adverse changes to terms at the Hyatt Grand Aspen to the significant detriment of Owners and Plaintiff, including by recording a different version of the Declaration than they provided to purchasers; imposing a new Portfolio Club at the resort; and releasing revised Residence Club Rules with new adverse terms. They failed to disclose such critical changes to Owners. They conspired with the other defendants to retain and then transfer more than 200 unsold fractionals into the Portfolio Trust for use with the Portfolio Club. In addition, Defendants operated the Hyatt Grand Aspen to benefit the competing Portfolio Club, including by exploiting their control over the reservation system to obtain prime float weeks at a disproportionately high success rate for the Portfolio Club members. They further violated their fiduciary duties by interpreting ambiguous documents in their favor to permit the wrongful conduct alleged in this Complaint.

99.    As a proximate result of Defendants breaching their fiduciary duties as alleged herein, Plaintiff and/or Owners suffered damages in an amount to be proven at trial, including diminution in value damages. In addition, equity and good conscience require that all things of

---

[20] *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2018 WL 1535509, at *5–6 (D. Colo. Mar. 29, 2018).

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **38** of **72**

value improperly obtained by Defendants as a result of the fiduciary duty breaches alleged herein

be disgorged and restored to Plaintiff and Owners and/or a constructive trust should be imposed

on such funds for the benefit of Plaintiff and Owners.

100.    Further, the Court's broad equitable power[21] should be invoked to extricate the

Hyatt Grand Aspen from the Portfolio Club imposed by Defendants in breach of the fiduciary

duties alleged herein, and to sever any ongoing contractual or other relationship between the

Parties by:

        a.    Declaring that the Condominium Association Management Contract for

the Hyatt Grand Aspen, or Management Agreement, is null and void;

        b.    Declaring that the Hyatt Vacation Club Resort Agreement, or Resort

Agreement, is null and void;

        c.    Declaring that the HPC Exchange Agreement has no further force and

effect at the Hyatt Grand Aspen;

        d.    Rescinding the transfer of unsold fractionals to the Portfolio Trust,

returning them to the Developer, and requiring that they be marketed consistent with the original

offering;

---

[21] *See, e.g.*, *Eaves v. Penn*, 587 F.2d 453, 462-63 (10th Cir. 1978) (upholding rescission of
changes to profit sharing plan wrongfully made by fiduciary, noting "Traditional trust law
provides for broad and flexible equitable remedies in cases involving breaches of fiduciary
duty"); Restatement (Third) of Restitution and Unjust Enrichment § 43 (2011) cmt. a ("If the
challenged transaction remains executory, the beneficiary may be able to obtain relief by simple
repudiation or by injunction").

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **39** of **72**

   e.  Requiring Defendants to transfer all interest in and title to the commercial

units to the Association;

   f.  Declaring that section 16.2 of the Declaration, which gives the Developer

the perpetual power to unilaterally amend the Declaration, section 16.1(c), which gives it veto

power over adverse changes to the Declaration through its retention of the majority of the

commercial unit, and section 1.2 of the Resort Agreement, which states that by purchasing a

fractional at the Hyatt Grand Aspen Owners were consenting to its terms, are null and void;

   g.  Issuing such further Orders as may be necessary to terminate any

continuing relationship between Plaintiff and Owners, on the one hand, and Defendants, on the

other.

**SECOND CAUSE OF ACTION**

**(Constructive Fraud)**

**(Against HV Global Management, Grand Aspen Lodging, and HVGG)**

101. Plaintiff incorporates by reference the allegations contained in the preceding and

subsequent paragraphs of this Complaint as if fully set forth herein.

102. HV Global Management (the management company for the Association), Grand

Aspen Lodging (the developer and declarant), and HVGG (the owner and operator of the Hyatt

Residence Club program), and each of them, had a duty as fiduciaries to act honestly, with full

disclosure and loyalty to the Plaintiff and the Owners as their principals.

103. Defendants, and each of them, knew that their uniform communications to Plaintiff

and the Owners regarding the operation of the Hyatt Residence Club and the Portfolio Club failed

to disclose material facts that they had a duty to disclose as fiduciaries and otherwise, including

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **40** of **72**

but not limited to the fact that the Portfolio Club was going to be unveiled and the fact the Portfolio

Club was going to damage the Plaintiff's and the Owners' property values, interests and

expectations.

104.    By virtue of their non-disclosure of material facts described above and herein,

Defendants were able to take undue advantage of the Plaintiff and the Owners. The

misrepresentations and non-disclosure of the material facts described above and elsewhere herein

were material in that they were likely to have a substantial effect on how the Plaintiff and the

Owners, including those deciding to purchase fractionals later in time, made decisions about the

Hyatt Grand Aspen property.

105.    Based on the materiality of the concealed facts, there is a presumption of reliance

on the part of Plaintiff and the Owners.

106.    As a direct and proximate result of their constructive fraud, the named Defendants,

and each of them, proximately caused damage to Plaintiff and the Owners, including by damaging

the value in their fractionals, in an amount to be proven at trial. In addition, a constructive trust

should be imposed on Defendants' ill-gotten gains to prevent their unjust enrichment, and they

should be required to disgorge all things of value they obtained as a result of their breaches of their

fiduciary duties and the scheme to defraud alleged herein in accordance with the Restatement

(Third) § 43.

107.    As a proximate result of Defendants constructive fraud, which also qualifies as a

breach of fiduciary duty, Plaintiff and/or Owners suffered damages in an amount to be proven at

trial, including diminution in value damages. In addition, equity and good conscience require that

all things of value improperly obtained by Defendants as a result of their constructive fraud be

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **41** of **72**

disgorged and restored to Plaintiff and Owners and/or a constructive trust should be imposed on

such funds for the benefit of Plaintiff and Owners.

108.    Further, the Court's broad equitable power should be invoked to extricate the Hyatt

Grand Aspen from the Portfolio Club imposed by Defendants in breach of the fiduciary duties

alleged herein, and to sever any ongoing contractual or other relationship between the Parties by:

a.    Declaring that the Condominium Association Management Contract for

the Hyatt Grand Aspen, or Management Agreement, is null and void;

b.    Declaring that the Hyatt Vacation Club Resort Agreement, or Resort

Agreement, is null and void;

c.    Declaring that the HPC Exchange Agreement has no further force and

effect at the Hyatt Grand Aspen;

d.    Rescinding the transfer of unsold fractionals to the Portfolio Trust,

returning them to the Developer, and requiring that they be marketed consistent with the original

offering;

e.    Requiring Defendants to transfer all interest in and title to the commercial

units to the Association;

f.    Declaring that section 16.2 of the Declaration, which gives the Developer

the perpetual power to unilaterally amend the Declaration, is null and void;

g.    Issuing such further Orders as may be necessary to terminate any

continuing relationship between Plaintiff and Owners, on the one hand, and Defendants, on the

other.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **42** of **72**

## THIRD CAUSE OF ACTION

**(Aiding & Abetting Breaches of Fiduciary Duty and Constructive Fraud)**

**(Against All Defendants)**

109.    The Plaintiff incorporates by reference the allegations contained in the preceding

and subsequent paragraphs as if fully set forth in this cause of action.

110.    As described above, the Management Company, HVGG, and the Developer owed

fiduciary duties to Plaintiff and Owners.

111.    Defendants, and each of them, knowingly aided and abetted and participated in the

breaches of fiduciary duties and constructive fraud committed by HV Global Management, Grand

Aspen Lodging, and/or HVGG by, *inter alia*, participating in, enabling, assisting, aiding,

encouraging, and/or facilitating the breaches of fiduciary duties and constructive fraud alleged

herein. They did so by, *inter alia*, failing to intervene to stop the harm caused by those breaches

and indeed helping to construct the Portfolio Club, keep the developer fractionals unsold,

dismantle the Hyatt Residence Club program at the Hyatt Grand Aspen, and affiliate the two.

112.    The Hyatt, ILG, and Marriott Defendants benefited from these fiduciary breaches

and constructive fraud. Hyatt is making licensing fees off of the use of the Hyatt name, and ILG

and Marriott have benefitted from a so-called halo effect from using the Hyatt Grand Aspen to sell

more points in their new Portfolio Club, while permitting and encouraging the underlying

Residence Club program to be crushed.

113.    As a proximate result of Defendants aiding and abetting breaches of fiduciary duty

and constructive fraud, Plaintiff and/or Owners suffered damages in an amount to be proven at

trial, including diminution in value damages. In addition, equity and good conscience require that

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **43** of **72**

all things of value improperly obtained by Defendants as a result of their aiding and abetting misconduct be disgorged and restored to Plaintiff and Owners and/or a constructive trust should be imposed on such funds for the benefit of Plaintiff and Owners.

114.    Further, the Court's broad equitable power should be invoked to extricate the Hyatt Grand Aspen from the Portfolio Club imposed by Defendants in breach of the fiduciary duties alleged herein, and to sever any ongoing contractual or other relationship between the Parties by:

a.    Declaring that the Condominium Association Management Contract for the Hyatt Grand Aspen, or Management Agreement, is null and void;

b.    Declaring that the Hyatt Vacation Club Resort Agreement, or Resort Agreement, is null and void;

c.    Declaring that the HPC Exchange Agreement has no further force and effect at the Hyatt Grand Aspen;

d.    Rescinding the transfer of unsold fractionals to the Portfolio Trust, returning them to the Developer, and requiring that they be marketed consistent with the original offering;

e.    Requiring Defendants to transfer all interest in and title to the commercial units to the Association;

f.    Declaring that section 16.2 of the Declaration, which gives the Developer the perpetual power to unilaterally amend the Declaration, is null and void;

g.    Issuing such further Orders as may be necessary to terminate any continuing relationship between Plaintiff and Owners, on the one hand, and Defendants, on the other.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **44** of **72**

## FOURTH CAUSE OF ACTION

**(Breach of Contract — Public Offering Statement and/or Declarations)**

**(Against Grand Aspen Lodging)**

115.    Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

116.    Defendants distributed a Public Offering Statement to each prospective buyer that became an accepted offer, and thus a contract, once each purchaser executed the standardized purchase contract that was included with the Public Offering Statement.

117.    Owners and Plaintiff performed all of the things required of them under this contract.

118.    Included in the Public Offering Statement was a version of the Declaration that was different from the version actually recorded in Pitkin County. Both the recorded and unrecorded versions of the Declaration barred implementation of the Portfolio Club because as a further timesharing program: Section 6.3 prohibits the partition of timeshare interests, and Section 12.5 prohibited any "use or practice that is the source of annoyance to Owners or which interferes with the peaceful possession and proper use of the Property by Owners." Additionally,

119.    Defendants' transfer of unsold inventory to the Portfolio Trust and imposition of the Portfolio Club breached these provisions of said contract or in the alternative of the unrecorded or recorded Declarations, both of which contained these provisions.

120.    As a result of Grand Aspen Lodging's breach of this contract, Plaintiff and Owners were damaged in an amount according to proof. Grand Aspen Lodging's breach of the contract

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **45** of **72**

was opportunistic,[22] and so equity and good conscience require that Grand Aspen Lodging

disgorge all things of value improperly obtained by them as a result of their misconduct.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief Regarding Implementation of the Portfolio Club)

### (Against All Defendants)

121.    Plaintiff incorporates by reference the allegations contained in the preceding and

subsequent paragraphs of this Complaint as if fully set forth herein.

122.    Plaintiff seeks declaratory judgment pursuant to C.R.S. §§ 13- 51-105 *et seq*. and

Rule 57 of the Colorado Rules of Civil Procedure.

123.    All necessary parties are before the Court pursuant to C.R.C.P. 57(j), an actual and

justiciable controversy exists regarding the parties' respective rights, and a declaratory judgment

will terminate the controversy giving rise to this proceeding.

124.    The actual and present controversy between the parties as to whether the

Governing Documents allowed Defendants to implement the Portfolio Club at the Hyatt Grand

Aspen. The Association contends Defendants lacked this power, while Defendants disagree.

125.    First, Plaintiff seeks a judicial declaration that Defendants are estopped from

relying on any provisions in the recorded plan that are materially different what is contained in

the Declaration actually distributed to all or most prospective purchasers. As alleged elsewhere

herein on information and belief, the version of the Declaration that Defendants included in the

Offering Plan and given to all or most purchasers was not the same as the Declaration that was

---

[22] *See, e.g., EarthInfo, Inc. v. Hydrosphere Resource Consultants, Inc.*, 900 P.2d 113 (Colo.
1995); *Watson v. Cat-Three, LLC*, 254 P.3d 1189 (Colo. App. 2011); Restatement (Third) of
Restitution and Unjust Enrichment, § 39 (2011).

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **46** of **72**

actually recorded in Pitkin County. Specifically, the recorded version included new language in

Article 18 that required Developer approval before any other timeshare plans or similar entities

could be created with respect to the Hyatt Grand Aspen or its fractionals, before any such entity

could acquire units or fractionals at the Hyatt Grand Aspen, and before any such entity could

incorporate such interests in their programs. Defendants violated their fiduciary duties by

recording a version of the Declaration that was materially different than the Declaration

distributed to prospective purchasers via the Public Offering Statement.

126.    Second, Plaintiff seeks a judicial declaration that Defendants' implementation of

the Portfolio Club at the Grand Hyatt Aspen and the related transfer of unsold inventory to the

Portfolio Trust were ultra vires and must be dismantled. Specifically:

a.    The Governing Documents specified only a single timeshare plan and

granted only narrow powers to Grand Aspen Lodging to, for example, potentially slice off whole

units (not fractionals) into other programs. *See, e.g.*, Purchase Agreement, §§ 10-13; Declaration,

§ 1.7; pp. 7, 8, 10, 11 (defining Timeshare Plan, Timeshare Unit); *id.* at § 12.1 (limiting residential

uses to those permitted by law and specified in the Declaration or reserved for the Declarant); *id.*

at § 12.3-12.4 (specifying that units essentially are reserved for Owners, as are the common

elements); Club Rules § 6.1 (prohibiting, *inter alia*, commercial uses of fractionals and their

contribution or us in any "other different timeshare plan or vacation club"); Condo Rules (similar).

b.    Section 12.16 of the Declaration gives the Aspen Grand Lodging the power

to create "other timeshare plans for Units . . . that may vary from the Timeshare Plan described in

this Section," but does not permit the imposition of the Portfolio Club on the Hyatt Grand Aspen.

The Portfolio Club is not based on whole "Units" but instead on the remaining fractionals in units

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **47** of **72**

left in the developer inventory. Moreover, the Portfolio Club was not created by Aspen Grand

Lodging but instead by HVGG and other Defendants.

        c.    Similarly, while Section 14.2(d) of the Declaration allows the Declarant to

withdraw any unsold unit from the timeshare plan, it does not allow the Grand Aspen Lodging to

take fractionals from units in which fractionals had been sold, making the transfer of these

fractionals to the Portfolio Club a separate breach.[23]

        d.    While Defendants reserved the right to add on additional external

exchanges, only Interval International was mentioned in the description of an external exchange,

leading a reasonable person to believe that the exchanges would be so limited. *See, e.g.*, 2005 Club

Rules § 5.1. And in any event, the Portfolio Club, however Defendants seek to denominate it in

the revised 2017 Club Rules, is in fact another timesharing program, not an independent exchange

program. As a result, the Portfolio Club is ultra vires.

    127.   Third, Plaintiff requests declaratory relief in the form of all necessary orders

required to sever any further contractual or other relationship between Plaintiff and Defendants.

It would be inequitable to further subject Plaintiff and Owners to the onerous contractual

provisions and other instruments of control that Defendants used to profit at the expense of

Plaintiff and Owners through breaches of contract and fiduciary duties, acts of fraud, and

conspiracy.

    128.   Accordingly, Plaintiff requests a judicial decree:

---

[23] The Declaration permits the Declarant to "rent or lease" unsold units, which the transfer of
fractionals into the Trust does not qualify as, and neither does the conversion of these fractionals
into points—or the bifurcation of the points from 1/20 fractionals into 1/40 fractionals.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **48** of **72**

      a.      Declaring that the governing documents did not empower Defendants to implement the Portfolio Club;

      b.      Declaring that the Condominium Association Management Contract for the Hyatt Grand Aspen, or Management Agreement, is null and void;

      c.      Declaring that the Hyatt Vacation Club Resort Agreement, or Resort Agreement, is null and void;

      d.      Declaring that the HPC Exchange Agreement has no further force and effect at the Hyatt Grand Aspen;

      e.      Rescinding the transfer of unsold fractionals to the Portfolio Trust, returning them to the Developer, and requiring that they be marketed consistent with the original offering;

      f.      Requiring Defendants to transfer all interest in and title to the commercial units to the Association;

      g.      Declaring that section 16.2 of the Declaration, which gives the Developer the perpetual power to unilaterally amend the Declaration, is null and void; and

      h.      Issuing such further Orders as may be necessary to terminate any continuing relationship between Plaintiff and Owners, on the one hand, and Defendants, on the other.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **49** of **72**

## SIXTH CAUSE OF ACTION

### (Breach of Contract — Management Agreement)

### (Against HV Global Management)

129.    Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

130.    Plaintiff entered into the Condominium Association Management Contract, or Management Agreement as it is referred to in this Complaint, with the predecessor in interest to Defendant HV Global Management, Hyatt Vacation Management Corporation, which for a period was also known as the Hyatt Residential Management Corporation.

131.    The Management Agreement imposed express fiduciary duties on the Management Company, stating that the Management Company "shall act in a fiduciary capacity with respect to the proper protection of and the accounting for the Association's assets." Mgmt. Agreement § 7. The Management Company breached this provision as alleged elsewhere herein, including by failing to protect the Association's assets by hiding and facilitating the transfer of the Developer fractionals to the Portfolio Trust.

132.    The Management Agreement created clear disclosure duties, including that the Management Company must "be responsible for working with [vacation] companies to stay abreast of relevant reservation and exchange procedures, Club rules and regulations, and for informing the Association, the Board and Owners of any significant changes in these procedures." *Id.* at § 6(m). The Management Company breached this provision, including by not informing the Association, the Board, or Owners of any such significant changes. The Management Company

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **50** of **72**

made no communications to any of these entities to which it owned fiduciary duties about the

transfer of the Developer fractionals into the Trust and the effect on Owners and the Association.

133.    As a result of HV Global Management's breach of the Management Agreement,

Plaintiff and Owners were damaged in an amount according to proof. In addition, the

Management Agreement should be rescinded for this material breach. This breach of the contract

by HV Global Management was opportunistic, and so equity and good conscience require that

Defendants disgorge all things of value improperly obtained by them as a result of their

misconduct.

**SEVENTH CAUSE OF ACTION**

**(Breach of Contract — Resort Agreement)**

**(Against HV Global Management, Grand Aspen Lodging, and HVGG)**

134.    Plaintiff incorporates by reference the allegations contained in the preceding and

subsequent paragraphs of this Complaint as if fully set forth herein.

135.    The Hyatt Vacation Club Resort Agreement, or Resort Agreement as it is referred

to herein, was entered into by the Association, Grand Aspen Lodging (the developer), HV Global

Management (the management company), and HVGG (the owner and operator of the Hyatt

Residence Club).

136.    Through this contract, the Developer, Management Company, and Association

agreed to:

a.    "[F]ully and accurately describe the Club to Owners and prospective

purchasers at the Resort," Resort Agreement § 4.1(b);

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **51** of **72**

　　　　b.　　　"[N]ot in any way misrepresent the Club or the Resort's relationship with

HVOI to Owners or prospective purchasers at the Resort," *id.*; and

　　　　c.　　　"Remain informed of new services and benefits provided by HVOI [now

HVGG] to Owners," *id.* § 4.1(c).

　　137.　　The Developer and Management Company breached § 4.1(b) by failing to

describe the Club fully or accurately to Owners or purchasers. In particular, among other failures,

they provided an unrecorded, materially different version of the Declaration in the Public

Offering Statement; did not give Owners or purchasers critical documents such as the

Management Agreement or Resort Agreement; never told Owners or purchasers about the

impending Portfolio Club or the transfer of the Developer fractionals into the Portfolio Trust and

activation for use by the Portfolio Club.

　　138.　　The Developer and Management Company also breached § 4.1(b) by

misrepresenting the relationship with HVGG to Owners and purchasers, including by not

informing purchasers of fractionals in 2017 about transfer of the Developer fractionals into the

Portfolio Club, which HVGG ran, greatly expanding its powers.

　　139.　　The Developer and Management Company either knew about the impending

Portfolio Club and transfer of Developer fractionals, or they breached the requirement of § 4.1(c)

that they "remain informed of new services and benefits provided by HVOI [now HVGG] to

Owners," *id.* § 4.1(c).

　　140.　　HVOI (now HVGG) in turn agreed to:

　　　　a.　　　"Fully and accurately describe the Resort to Club Members," *id.* at §

4.2(a);

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **52** of **72**

   b. "[N]ot in any way misrepresent the Resort's relationship with HVOI to Club Members," *id.*;

   c. "Remain informed of new services and benefits at the Resort," *id.* at § 4.2(b); and

   d. "[I]mmediately notify Developer, Association and Management Company of any change in any fact or circumstance affecting the operation of the Resort or the Club with respect to the Resort," *id.* at § 4.6.

  141. HVGG breached its disclosure obligations under § 4.2(a) by failing to describe the Club fully or accurately to Owners or purchasers. In particular, among other failures, it did not give Owners critical documents such as the Management Agreement or Resort Agreement; and never told Owners about the impending Portfolio Club or the transfer of the Developer fractionals into the Portfolio Trust and activation for use by the Portfolio Club.

  142. HVGG breached its disclosure obligation under § 4.6 by failing to notify the Association about transfer of the fractionals into the Portfolio Trust for activation by the Portfolio Club until long after it was a fait accompli.

  143. As a result of these defendants' breach of the Resort Agreement, Plaintiff and Owners were damaged in an amount according to proof. In addition, the Resort Agreement should be rescinded for this material breach. This breach of the contract was opportunistic, and so equity and good conscience require that Defendants disgorge all things of value improperly obtained by them as a result of their misconduct.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **53** of **72**

## EIGHTH CAUSE OF ACTION

### (Tortious Interference with Contract)
### (Against All Defendants)

144.    The Plaintiff incorporates by reference the allegations contained in the preceding
and subsequent paragraphs of this Complaint as if fully set forth herein.

145.    Defendants knew that Owners and the Association had contracts—namely, the
Purchase Agreement, the Management Agreement, the Declaration, and the Resort Agreement—
with HV Global Management, Grand Aspen Lodging, and HVGG.

146.    Defendants intentionally by word or conduct interfered with those contracts by
purchasing the developer fractionals from the Grand Aspen Lodging, creating the Portfolio Trust,
transferring the fractionals into the Portfolio Trust, and creating a Portfolio Club that used the
Portfolio Trust properties in breach of core contractual provisions and implied promises. This
interference was improper, given the interests of the parties and of society.

147.    Defendants also interfered with additional provisions of the underlying contracts
specified in the Third Cause of Action for breach of contract. For example, the 2017 Club Rules
placed complicated restrictions on Owners' ability to reserve float weeks during the Home
Reservation Period, violating the promise that these would be available on a first-come first
served basis and available in the type of units they had purchased. *See* Declaration (defining
"floating week" and "Home Resort Preference Period (Float)"); *id.* § 12.16(c); Resort Agreement,
§ 3.2(b).

148.    Defendants' interference with contract has damaged the Plaintiff and Owners in
an amount to be proved at trial that is in excess of the jurisdictional limit of this Court.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **54** of **72**

### NINTH CAUSE OF ACTION

#### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

#### (Against Grand Aspen Holding and, as alter egos or successors in interest, HVGG, HV Global Marketing, and ILG)

149.    The Plaintiff incorporate by reference the allegations contained in the preceding

and subsequent paragraphs as if fully set forth in this cause of action.

150.    A covenant of good faith and fair dealing is implied in every contract by operation

of law. Pursuant to this implied covenant, Defendants could not legally interfere with the rights of

Owners to receive the benefits due to them under the standardized purchase contracts and/or Public

Offering Statement that became a contract upon acceptance by purchaser, or do anything

inconsistent with any promises that a reasonable person in the position of the promisee would be

justified in understanding were included in this contract.

151.    The Declaration that was attached to and incorporated by reference into the Public

Offering Statement contained an implied promise by Grand Aspen Holding to sell a sufficient

number of Club Interests to make this fractional offering viable.[24] A reasonable purchaser would

believe that Defendants would timely sell all the fractionals, or at least a sufficient number to make

the Hyatt Grand Aspen viable. The Colorado Disclosure document provided with the Public

Offering Statement also implied that Grand Aspen Holding would actively sell its own units. HV

Global Management breached this implied promise and the implied covenant of good faith and

fair dealing by retaining more than 200 unsold fractionals that Defendants later transferred into the

Portfolio Trust for use by Portfolio Club members.

---

[24] *See 511 W. 232nd Owners Corp. v. Jennifer Realty Co.,* 285 A.D.2d 244 (NY 2001); *Reiser v. Marriott Vacations Worldwide Corp.,* 2016 WL 1720741, at *5–6 (E.D. Cal. Apr. 29, 2016).

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **55** of **72**

152.    In addition, the Declaration that was attached to and incorporated by reference into the Public Offering Statement contained an express promise by Grand Aspen Holding to limit the use of the Hyatt Grand Aspen to the timeshare plan specified in the Declaration and the other offering documents. Grand Aspen Holding breached this express promise and the implied covenant of good faith and fair dealing by retaining more than 200 unsold fractionals that Defendants later transferred into the Portfolio Trust for use by Portfolio Club members

153.    Grand Aspen Holding's breach of these express and implied promises has frustrated Owners' rights and reasonable expectations under the parties' contract.

154.    At all times relevant hereto, the Hyatt, ILG, and Marriott Defendants were the alter egos of Defendants HVGG, Management Company, and Developer, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist.

155.    As a result of these Defendants' breach of these express and implied promises in the standardized purchase contracts and/or Public Offering Statement, Plaintiff and Owners were damaged in an amount according to proof. These breaches of the contract were opportunistic, and so equity and good conscience require that Defendants disgorge all things of value improperly obtained by them as a result of their misconduct.

<u>**TENTH EIGHTH CAUSE OF ACTION**</u>
**(Conspiracy)**
**(Against All Defendants)**

156.    The Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **56** of **72**

157.    Defendants, and each of them, conspired with the remaining Defendants' scheme to commit the wrongful and unlawful conduct alleged herein.

158.    The conspiring Defendants had prior notice of the remaining Defendants' wrongful and unlawful activities, but nonetheless acted affirmatively to help the other Defendants perpetrate their scheme against Owners and the Plaintiff.

159.    All Defendants acted and agreed on objects to be accomplished -- to operate and run the Association for wrongful financial gain, rather than for the benefit of the homeowners, and to operate and run the Hyatt Residence Club program more generally for their personal gain to the detriment of the legacy Owners -- and there was a meeting of the minds among all Defendants on that object. While each of Defendants participated in the conspiracy at different times and in different capacities, the object of the conspiracy remained the same at all relevant times.

160.    Defendants, working together, accomplished unlawful overt acts in furtherance of the wrongful and unlawful activities alleged herein.

161.    Likewise, the effects of the conspiracy were constant and injured Owners and the Plaintiff. Defendants' conspiring in the wrongful and unlawful conduct alleged herein has damaged them in an amount to be proved at trial that is in excess of the jurisdictional limit of this Court.

162.    Further, because Defendants profited at Owners' expense, they should be ordered to disgorge all benefits they received, and a constructive trust should be imposed on all ill-gotten gains for the benefit of Owners.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **57** of **72**

## ELEVENTH CAUSE OF ACTION

**(Violations of the Colorado Organized Crime Control Act, C.R.S. § 18-17-104(1)-(3))**

**(Against All Defendants)**

163.    The Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

164.    The Colorado Organized Crime Control Act, or COCCA, prohibits a range of acts arising from patterns of racketeering, as well as conspiracy to violate those provisions. C.R.S. § 18-17-104(1)-(4). Defendants and other members of the COCCA Enterprise violated those substantive prohibitions.

165.    First, the Portfolio Trustee, Portfolio Trust, HG, Inc., HPC Developer, HPC Owners' Association, HVGG, the Management Company, Hyatt Corporation, Hyatt Hotels Corporation, Interval Acquisitions Corp., ILG, Marriott, SOI Acquisitions Corp. knowingly *received*, and knowingly *used and invested*, *proceeds* from a pattern of racketeering activity in real property—namely, the Hyatt Grand Aspen and the resorts in the Residence Club—and from operating an enterprise, as discussed further *infra*.

166.    Second, the Developer and the Management Company knowingly *maintained*, both directly and indirectly, an interest in as well as control of an enterprise—the Association—through a pattern of racketeering activity. Additionally, all Defendants and other members of the COCCA Enterprise also knowingly *acquired or maintained*, indirectly or directly, *an interest in* as well as *control of* the associated-in-fact enterprise discussed *infra*—as well as control of real property, namely, the Hyatt Grand Aspen and the resorts in the Residence Club—through a pattern of racketeering activity.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **58** of **72**

167.    Third, all Defendants and other members of the COCCA Enterprise knowingly *conducted and participated in*, directly and or indirectly, the associated-in-fact enterprise through a pattern of racketeering activity when employed by or associated with such enterprise. Each Defendant and other member of the COCCA Enterprise is a subsidiary, affiliate, or otherwise formally related to the parent Hyatt, ILG, and Marriott Defendants.

168.    At all relevant times, the Association was an "enterprise" within the meaning of C.R.S. § 18-17-103(2) and other provisions of the COCCA, C.R.S. § 18-17-101, *et seq.* ("COCCA"). As alleged above, Defendants and other members of the COCCA Enterprise used the Association as a pawn to perpetrate a pattern of criminal activity.

169.    In addition and/or in the alternative, Defendants and the other members of the COCCA Enterprise constituted an "associated-in-fact enterprise" in that they knowingly associated in fact to achieve the fraudulent and otherwise unlawful purposes alleged herein. Defendants and other members of the COCCA Enterprise knowingly participated in the operation and/or management of the enterprise(s), which had ongoing organization, formal or informal, and functioned as a continuing unit. (These enterprises are collectively referred to herein as the "COCCA Enterprise.")

170.    Through explicit and/or tacit agreements, Defendants and other members of the COCCA Enterprise agreed to function and did function as a unit and according to the specified roles alleged herein. Among other acts alleged elsewhere in this Complaint, they:

a.    Retained developer inventory at the Hyatt Grand Aspen, failing to use good faith efforts to sell the fractionals, and then transferred the remaining fractionals to a newly created Trust operating solely for the benefit of Defendants and the members of the new points program.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **59** of **72**

   b.  Abused their control of the Association through membership on the Association and control of the Management Company, which was delegated the Association's powers and duties.

   c.  Abused their power as the program manager of the Residence Club and the Portfolio Club, including by using their control over the reservation system to jump ahead in line and reserve the most desirable weeks for points members at the Hyatt Grand Aspen.

   d.  Failed to disclose critical information to Owners and the Plaintiff about changes in their rights at the Hyatt Grand Aspen, despite specific duties to provide prompt and full disclosure.

   e.  Failed to expand the Residence Club network and otherwise undermining the fractional ownership model in favor of the points model, which they perceived to be more favorable to their interests—indeed, shrinking, instead of increasing, the size of the Residence Club in favor of the Portfolio Club by 1) converting legacy Owners to points owners (which decreases the tradable inventory in the Residence Club); 2) limiting access to any new clubs that were built to points members; and 3) failing to develop new Residence Club properties.

   f.  Kept the number of points required to access Hyatt Grand Aspen lower than justified to entice potential Portfolio Club points users.

   g.  Subjected Owners and the Plaintiff to a new agreement affecting the Hyatt Residence Club locations—the Portfolio Club—without their consent to substantial changes in terms.

   h.  Profited through licensing of the Hyatt name to the Residence Club and Portfolio Club, despite knowing of these harms.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **60** of **72**

171.    Defendants, and each of them, are "persons" within the meaning of C.R.S. § 18-17-103(4) (and other provisions of COCCA) and are distinct from the enterprise(s) they formed, managed, acquired an interest in, controlled, and/or operated to perpetrate the fraud alleged in this Complaint.

172.    Each member of the COCCA Enterprise, including each Defendant, knowingly participated in the conduct of this enterprise in furtherance of a common purpose that all members of the COCCA Enterprise agreed upon, namely to run the affairs of the Association for private financial gain rather than for the benefit of the Hyatt Grand Aspen Owners.

173.    The predicate acts alleged in this Complaint constitute a pattern of racketeering activity within the meaning of C.R.S. § 18-17-103(3). The COCCA Enterprise's conduct, including the predicate acts and pattern of racketeering activity, amount to and/or pose a threat of continued criminal conduct.

174.    Defendants and other members of the COCCA Enterprise committed at least two predicate acts of racketeering activity within the meaning of C.R.S. § 18-17-103(3) (and other provisions of COCCA) that are related to the conduct of the enterprise(s).

175.    Defendants and other members of the COCCA Enterprise regularly used the mails and interstate wires in furtherance of the fraud alleged herein in violation of 18 U.S.C. §§ 1341 and 1343, which are both predicate acts under COCCA. The mailings and wires in furtherance of this scheme to defraud include but are not limited to:

a.    Withholding material information from Owners and the Plaintiff despite having a duty to disclose. Even when Owners emailed Defendants asking for more information, they received no response.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **61** of **72**

   b. Sending communications to Owners and the Plaintiff designed to "lull"

them into believing no fraud was underway, as well as to mislead them about any lost benefits,

including the following:

   i. On January 4, 2017, Owners received the revised 2017 Club Rules

in an email that did not mention that the Rules had been changed to accommodate the Portfolio

Club. The email was sent from the address info@hyattvoi.com, and had HVGG's information at

the bottom. An Owner followed up and said: "please confirm 2017 Club Rules has changes, and

if it has changes, please advise what those changes are or where in the document they can be found.

This is a 28 page single space document and guidance is requested/needed." In response, on

January 19, 2017, Andrew Carter, the director of Association Compliance for Hyatt Vacation

Ownership, wrote a grossly incomplete response, failing to mention that the new Section 5.2

covered the still secret Portfolio Program: "The changes to the club rules," Carter wrote, "involve

increases to the point values of some weeks at the Key West and Bonita Springs properties. A full

breakdown of the changes will be available soon, and I will forward that to you as soon as it's

available." That was the only change he mentioned and no full breakdown was ever forwarded.

   ii. HVGG, using the same email address, info@hyattvoi.com, sent

regular Hyatt Grand Aspen newsletters to Owners, including on January 23, 2017, July 7, 2017,

and January 2018 and September 18, 2018, that similarly failed to mention the transfer of

fractionals. These newsletters cover issues such as the fate of the ice rink and changes to the

business center.

   iii. A December 7, 2017, email from HVGG titled "Exciting News from

Hyatt Residence Club," which one might expect would finally explain the excision of the

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **62** of **72**

Developer fractionals into the Trust, was silent. It did announce a new member website and then,

for the first time—and six months after the "activation" of the Developer fractionals in the

Portfolio Trust and eleven months after the revised Club Rules—"announce[d] a new Club-to-

Club Exchange program that expands travel options for Hyatt Residence Club members into

Portfolio Program Resorts." The email provided no links to the Portfolio Club documents or

explanations of the harmful impacts on Owners.

      iv.      On September 4, 2018, Thorp Thomas, the senior vice president of

the Management Company sent Owners an email, via HVGG's email address, about Marriott's

acquisition of ILG that failed to discuss the Portfolio Club or fate of the Developer fractionals.

      v.      HVGG sent an email to Owners from the address

hgaconcierge@hyattvoi.com on February 20, 2019, that failed to discuss the Portfolio Club or

mention the transfer of the Developer fractionals.

      c.      Sending emails and meeting with each other in order to design and

implement the elaborate scheme of placing the Developer fractionals at the Hyatt Grand Aspen

into the Trust and then the Portfolio Club through the Special Warranty Deed, Contribution Deed,

and notice of activation recorded in June 2017.

      176.      Defendants and other members of the COCCA Enterprise committed additional

predicate acts relating to the use of their computers. The Colorado computer crime statute makes

it a crime to access any computer, computer network, or computer system to devise or execute any

scheme or artifice to defraud. C.R.S. § 18-5.5-102. Acts that violate this statute constitute predicate

acts of racketeering activity under COCCA. Defendants and other members of the COCCA

enterprise, in the course of a fraudulent scheme, used computers to draft documents such as the

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **63** of **72**

Special Warranty Deed conveying the Developer fractionals to the HPC Developer, the Contribution Deed from the HPC Developer to the Portfolio Trust, the notice of activation of those fractionals in the Portfolio Club, the revised 2017 Club Rules, and related document; to search the Internet; and to send and receive e-mails about this scheme and these documents. Furthermore, they used the computer to send intrastate e-mails—both within Florida and within Colorado— which constitutes a predicate act under COCCA.

177.    Defendants and other members of the COCCA Enterprise committed additional predicate acts relating to filing false reports under C.R.S. § 18-5-114 (offering a false instrument for recording), which makes a crime where, "knowing that a written instrument relating to or affecting real or personal property or directly affecting contractual relationships contains a material false statement or material false information, and with intent to defraud, he presents or offers it to a public office or a public employee, with the knowledge or belief that it will be . . . recorded or become a part of the records of that public office . . . ," *id.* § 18-5-114(1), even without intent to defraud, *id.* § 18-5-114(3). Here, Grand Aspen Lodging recorded documents relating to the public offering at the Hyatt Grand Aspen, including Special Warranty Deeds for the sale of Hyatt Grand Aspen fractionals in 2016 that did not acknowledge the impending Portfolio Club but instead claimed that grantees were obtaining property "in accordance with the Declaration of Condominium."

178.    Defendants and other members of the COCCA Enterprise conducted the enterprise(s) and committed the aforementioned predicate acts over the course of nearly a decade and a half, beginning on or about 2005 and continuing at least through the present. These predicate acts amount to and pose a threat of continued criminal conduct.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **64** of **72**

179.   Defendants and the other members of the COCCA Enterprise reinvested the proceeds of this scheme to defraud in the continuing enterprise.

180.   The conduct alleged in this Complaint was part of a scheme that Defendants and the other members of the COCCA Enterprise formulated to run the affairs of the Association and/or their associated-in-fact enterprise for private financial gain rather than for the benefit of the Plaintiff and Owners. Defendants and the other members of the COCCA Enterprise perpetrated this scheme with the specific intent to deceive and/or defraud the Plaintiff and Owners, and did deceive and/or defraud the Plaintiff and Owners.

181.   The Plaintiff and Owners suffered harm and/or injury to its property as a direct and proximate result of the COCCA Enterprise's wrongful conduct, including loss of inventory for float weeks, decrease in property value, and increase in wear and tear, dues, and fees. This loss or damage includes that caused by the COCCA conspirators' ongoing effort to diminish the Hyatt Grand Aspen offering while building up the Portfolio Club.

182.   Plaintiff seeks relief for these harms under C.R.S. § 18-17-106, including injunctive relief pursuant to C.R.S. § 18–17–106(1) and (6) in the form of a judicial decree:

a.   Declaring that the governing documents did not empower Defendants to implement the Portfolio Club at the Hyatt Grand Aspen;

b.   Declaring that the Condominium Association Management Contract for the Hyatt Grand Aspen, or Management Agreement, is null and void;

c.   Declaring that the Hyatt Vacation Club Resort Agreement, or Resort Agreement, is null and void;

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **65** of **72**

   d.  Declaring that the HPC Exchange Agreement has no further force and effect at the Hyatt Grand Aspen;

   e.  Rescinding the transfer of unsold fractionals to the Portfolio Trust and returning them to the Developer, *see id.* § 18-17-106(1)(a), and requiring that they be marketed consistent with the original offering, *id.* § 18-17-106(1)(b);

   f.  Requiring Defendants to transfer all interest in and title to the commercial units to the Association, *see id.* § 18-17-106(1)(a);

   g.  Declaring that section 16.2 of the Declaration, which gives the Developer the perpetual power to unilaterally amend the Declaration, is null and void; and

   h.  Ordering that Marriott and its subsidiaries refrain from wrongfully placing fractionals into the Trust for use by the Portfolio Club, *id.* § 18-17-106(1)(b); and

   i.  Issuing such further Orders as may be necessary to terminate any continuing relationship between Plaintiff and Owners, on the one hand, and Defendants, on the other.

   183.  Further, pursuant to *id.* § 18-17-106(1)(d)-(e), Plaintiff seeks an order requiring the suspension or revocation of the Colorado licenses of Developers, including licenses as subdivision developers and/or real estate companies held by HVGG, Grand Aspen Lodging, HPC Developer, HV Global Marketing, and Marriott Vacations Worldwide, as their managerial agents authorized or engaged in conduct in violation of section 18-17-104 and forfeiture is necessary to prevent further criminal activity, in the best interest of the State. Plaintiff also seeks an order pursuant to those provisions suspending or revoking the Colorado business registrations held by HVGG, HV Global Marketing, Hyatt Corporation, HVO, Grand Aspen Lodging, and the Management

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **66** of **72**

Company, as their managerial agents authorized or engaged in conduct in violation of section 18-

17-104 and forfeiture is necessary to prevent further criminal activity, in the best interest of the

State.

      184.    Plaintiff is also entitled to recover treble damages, costs of suit, and attorneys' fees.

**TWELFTH CAUSE OF ACTION**

**(Conspiracy to Violate COCCA, C.R.S. § 18-17-104(4))**

**(Against All Defendants)**

      185.    The Plaintiff incorporates by reference the allegations contained in the preceding

and subsequent paragraphs of this Complaint as if fully set forth herein.

      186.    In violation of C.R.S. § 18-17-104(4), Defendants and other members of the

COCCA Enterprise, by their words or actions, objectively manifested an agreement to participate,

directly or indirectly, in the scheme to defraud and thereby conspired with one another and/or

endeavored to commit the wrongful conduct alleged in this Complaint.

      187.    Defendants and other members of the COCCA Enterprise by their words and/or

actions, objectively manifested an agreement on the common purpose of this enterprise, *i.e.*, to

run the affairs of the Association for private financial gain rather than for the benefit of the

members of the Association, and reinvested the proceeds of that misconduct in their common

enterprise.

      188.    Further, Defendants and other members of the COCCA Enterprise, by their words

and/or actions, objectively manifested an agreement to perpetrate this scheme through predicate

acts amounting to a pattern of racketeering activity. Defendants, and each of them, agreed to

commit predicate crimes, aid and abet the commission of predicate crimes by other members of

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **67** of **72**

the COCCA Enterprise, and/or agreed that some members of the enterprise would commit the

predicate acts for the benefit of all members and/or the enterprise.

189.    Owners and the Plaintiff Association suffered harm and/or injury to their person

or property as a direct and proximate result of the COCCA Enterprise's wrongful conduct.

190.    Under the provisions of COCCA, Owners are entitled to recover treble damages,

costs of suit and attorneys' fees. Further, Plaintiff seeks relief for these harms under C.R.S. § 18-

17-106, including injunctive relief pursuant to C.R.S. § 18–17–106(1) and (6) in the form of a

judicial decree outlined in the Eleventh Cause of Action.

## THIRTEENTH CAUSE OF ACTION
### (Violation of Colorado Consumer Protection Act, C.R.S. § 6-1-703)
### (Against all Defendants)

191.    The Plaintiff incorporates by reference the allegations contained in the preceding

and subsequent paragraphs of this Complaint as if fully set forth herein.

192.    Colorado prohibits deceptive trade practices that include, in the course of one's

business, misrepresenting the investment, resale or rental value of any time share, the conditions

under which a purchaser may exchange the right to use accommodations or facilities in one

location for the right to use accommodations or facilities in another location, and also, with

respect to the sale or solicitation of any time share resale service, making false or misleading

statements, including statements concerning the value of the resale time share; and the current or

future costs of owning the resale time share, including assessments, maintenance fees, or taxes.

193.    Those who assist or aid in such violations are equally liable. C.R.S. § 6-1-703(4)(a).

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
COMPLAINT AND JURY DEMAND
Page **68** of **72**

194.    On information and belief, fractionals were sold at the Hyatt Grand Aspen during the period when the ILG and Hyatt Defendants knew about the upcoming addition of the Portfolio Club at the Hyatt Grand Aspen and the transfer of fractionals from the Hyatt Grand Aspen into a Trust. Many such resale transactions were accompanied by sales pitches, promotional materials, and other representations that failed to acknowledge the degree to which the Residence Club offering had been decimated—and/or the merger with the Portfolio Club. A subset of Owners who bought properties after the plan for the Portfolio Club was put in motion depended on Defendants' false and misleading statements about the scope of their purchases.

195.    Additionally, a larger group of purchasers bought fractionals at the Hyatt Grand Aspen at a time when Defendants knew that the Residence Club at the Hyatt Grand Aspen had been greatly diminished.

196.    Defendants violated the Consumer Protection Act by marketing the fractional interest as an alternative to traditional timeshares, representing that future owners would be able to enjoy the same benefits and privileges as the original plan had promised, and by failing to warn purchasers of the impending Portfolio Club, which transformed the fractional ownership into a traditional timeshare.

197.    Defendants also aided and abetted other Defendants in doing so.

198.    Defendants' misrepresentations and failures to warn were willful, knowing and intentional.

199.    As a direct and proximate result of Defendants' conduct, Plaintiff and Owners have suffered and will continue to suffer injuries, damages and losses, including without limitation treble damages and attorney fees pursuant to C.R.S. § 6-1-113.

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **69** of **72**

## FOURTEENTH CAUSE OF ACTION

### (Unjust Enrichment)

### (Against All Defendants)

200.    The Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

201.    Defendants have unlawfully profited at the Plaintiff's and Owners' expense, and/or received the fruits of the wrongful conduct of other defendants.

202.    Owners and Plaintiff have conferred a benefit on Defendants, and each of them, that should be restored to Plaintiff, as it would it would be inequitable and unjust for the Defendants to be permitted to retain these things of value, even if they received the benefit without participating in the wrongdoing.[25]

203.    Those benefits include (i) the proceeds from the sale of points for unsold fractionals that should have remained with the Hyatt Residence Club, including the profits made by certain Defendants taking advantage of Hyatt Grand Aspen's *Jennifer Realty* violation; (ii) the profits gained by exploiting the Hyatt Grant Aspen name while undermining the Hyatt Residence Club program itself; and (iii) the profits gained by unfairly restricting Owners' float week options.

---

[25] *See DCB Const. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 119 (Colo. 1998) (unjust enrichment does not require a promise or privity between the parties"); *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Assoc.*, 649 P.2d 1093, 1097 (Colo. 1982) ("The scope of this remedy is broad, cutting across both contract and tort law, with its application guided by the underlying principle of avoiding the unjust enrichment of one party at the expense of another.").

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **70** of **72**

204.    Defendants should be compelled to disgorge to Plaintiff all improperly obtained

things of value obtained by them as a result of the wrongful conduct alleged herein. A constructive

trust should be imposed upon all such things of value in order to prevent the unjust enrichment of

Defendants, and each of them.[26]

## FIFTEENTH CAUSE OF ACTION
### (Accounting)
### (Against all Defendants)

205.    The Plaintiff incorporates by reference the allegations contained in the preceding

and subsequent paragraphs of this Complaint as if fully set forth herein.

206.    The Plaintiff has been wrongfully deprived of money, information and documents

relevant to their management of public resources.

207.    Defendants have improperly derived profits in connection with their control over

and concealment of information from Owners and the Plaintiff.

208.    The Plaintiff has a right to an accounting for the profits improperly obtained by

Defendants.  ·

209.    Under the circumstances, it is just and equitable to require Defendants to provide

an accounting.

## RESERVATION OF RIGHTS

The Plaintiff expressly reserves all rights accorded under Colorado law, including but not

limited to the right to amend this pleading as may be necessary in light of new or additional factual

---

[26] Restatement (Third) of Restitution and Unjust Enrichment § 55, cmt. a (2011).

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **71** of **72**

information gathered throughout the disclosure and discovery phases of this litigation and the right

to plead exemplary damages in accordance with C.R.S. § 13-21.102.

**JURY DEMAND**

The Plaintiff demands a trial by jury for all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment against Defendants, and each of them, as

follows:

   a.    For the declaratory and injunctive relief identified herein;

   b.    For special damages according to proof;

   c.    For general damages according to proof;

   d.    For restitution of all monies paid to Defendants or their assigns, according to proof;

   e.    That Defendants disgorge and repay to Owners all compensation paid to them by

the Plaintiff and Owners; that the Court order an accounting of said compensation; and that a

constructive trust be imposed upon said compensation for the benefit of Owners;

   f.    That Defendants disgorge to Owners all profits received as a result of the conduct

described herein; that the Court order an accounting of said profits and that a constructive trust be

imposed upon said profits for the benefit of Owners;

   g.    That damages awarded for the COCCA causes of action be trebled by the Court;

   h.    That Plaintiff receives pre-judgment and post-judgment interest as allowed by law;

   i.    That Plaintiff recovers its costs of the suit and attorneys' fees as allowed by law; and

   j.    For all other relief allowed by law and equity.

DATED: May 29, 2019

*G.A. Resort Condominium Ass'n, Inc. v. ILG, LLC, et al.*
Pitkin County District Court, Case No. 2019 CV 30051
**COMPLAINT AND JURY DEMAND**
Page **72** of **72**

REISER LAW, P.C.

*/s/ Michael J. Reiser*
Michael J. Reiser, #16161
1475 N. Broadway, #300
Walnut Creek, CA 94596
Telephone: (925) 256-0400
Fax: (925) 476-0304
Email: reiserlaw@gmail.com
*Attorney for the Plaintiff*

THE MATTHEW C. FERGUSON
LAW FIRM, P.C.

*/s/ Matthew C. Ferguson*
Matthew C. Ferguson, #25687
119 South Spring, Suite 201
Aspen, Colorado 81611
Telephone: (970) 925-6288
Facsimile: (970) 925-2273
Email: matt@matthewfergusonlaw.com
*Attorney for the Plaintiff*

Plaintiff's Address:
415 E. Dean Street
Aspen, CO 81611
4833-2828-4568, v. 1