# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Gordon P. Gallagher, United States Magistrate Judge

Civil Case No. 19-CV-01870-RM-GPG

G.A. RESORT CONDOMINIUM ASSOCIATION,
INC., a Colorado Nonprofit Corporation,

      Plaintiff,

v.

ILG, LLC, a Delaware limited liability company,
CHICAGO TITLE TIMESHARE LAND TRUST,
INC., a Florida corporation, as Trustee for HPC
TRUST,
GRAND ASPEN LODGING, LLC, a Delaware
limited liability company,
HPC DEVELOPER, LLC, a Delaware limited
liability company,
HPC OWNERS' ASSOCIATION, INC., a Florida
non-profit,
HV GLOBAL GROUP, INC., a Delaware
corporation,
HV GLOBAL MANAGEMENT CORPORATION,
a Florida corporation, and
MARRIOTT VACATIONS WORLDWIDE
CORPORATION, a Delaware corporation,

      Defendants.

---

## REPORT AND RECOMMENDATION GRANTING IN PART AND DEFERRING IN PART DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

---

This matter comes before the Court on Defendants Grand Aspen Lodging, LLC (G.A. Lodging), HV Global Group, Inc. (HVGG), HV Global Management Corporation (HVGM), ILG, LLC (ILG), Chicago Title Timeshare Land Trust, Inc. (Chicago Title), HPC Developer, LLC (HPC Developer), HPC Owners' Association, Inc. (HPC Owners), and Marriott Vacations Worldwide Corporation's (MVWC) (collectively, the Defendants) Motion to Dismiss the Second Amended Complaint (D. 55)[1], Plaintiff's response (D. 86), and Defendants' reply (D. 97).  The motion has been referred to this Magistrate Judge.  (D. 57).[2]  The Court has reviewed the pending motion, response, reply, and all attachments.  The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises.  Oral argument is not necessary.  In this Report and Recommendation, this Magistrate Judge solely examines the issue of jurisdiction and respectfully recommends that the Defendants' Motion to Dismiss the Second Amended Complaint be GRANTED IN PART AND DEFERRED IN PART for the reasons specifically set forth below.

## I.    FACTS

The Court briefly summarizes the pertinent facts drawn from the Plaintiff's Second Amended Complaint here and will elaborate as necessary in the analysis.  (*See* D. 54).  While the parties disagree as to many facts, the basic framework of this case is largely undisputed.  This

---

[1] "(D. 55)" is an example of the stylistic convention used to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Report and Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  FED. R. CIV. P. 72(b).  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

matter arises out of a dispute between the parties regarding the alleged diminution in value of the Plaintiff's fractional interests in the Hyatt Vacation Club Grand Aspen Resort (the Resort), a timeshare resort created in 2005 and located in Aspen, Colorado.  (D. 54, pp. 2, 14; D. 55, p. 2). The timeshare resort is part of the Hyatt Residence Club (HRC), which consists of approximately sixteen HRC timeshare resorts.  Plaintiff, the Resort's homeowners' association, consists of more than 560 Association members. (D. 54, pp. 2, 14).  Association members own one or more of the 1,060 fractional timeshare interests (i.e., an undivided 1/20 fee ownership interest per fractional) at the Resort, and each interest gave owners, among other things, "the right to one fixed week in a dedicated unit at the Resort and the right to reserve a full float week and a split float week, adding up to about 10 float days."  (D. 54, pp. 14; D. 54-1, pp. 50, 93).

In 2014, ILG acquired "Hyatt Hotels Corporation's subsidiaries engaged in the shared ownership industry, including Hyatt Residence Club, and the Developer's inventory of more than 200 unsold fractionals."  (*Id.*, p. 16).  In 2017, Plaintiff alleges that Defendants created a new points-based program, the Hyatt Residence Club Portfolio Program (Portfolio Club), which would allow Portfolio Club points members to stay at HRC properties, including the Resort.  (D. 54, p. 3).  In June 2017, the remaining unsold Resort interests (approximately 20 percent) were transferred from G.A. Lodging to the Hyatt Residence Club Portfolio Trust (Portfolio Trust).  (*Id.*, p. 4).  Plaintiff alleges that Defendants then sold points arising from these interests to Portfolio Club points members as "Vacation Ownership Interests."  (*Id.*, p. 4).  Plaintiff alleges that Defendants earned at least $30 million in profits from these point sales to Portfolio Club points members.  (*Id.*).  Moreover, Plaintiff alleges that Owners cannot book stays at the Resort if they do not have points and, even with points, their ability to successfully reserve time at the Resort is restricted.  (*Id.*).  As a result, many Resort members converted their fractional purchases into

Portfolio Club points, which has contributed to the Owners having diminished access to other fractionals within the HRC. (*Id*.).

Plaintiff originally filed this action in the Colorado state court, and Defendants removed the action pursuant to 28 U.S.C. §§ 1332, 1367, 1441, 1446, and 1453. (D. 1, p. 2). A Scheduling Conference was held on December 13, 2019. (D. 79). Defendants filed a Notice of Supplemental New Authority on April 1, 2002 (D. 98), to which Plaintiff filed a Response (D. 99). Plaintiff raises the following causes of action: (1) breach of fiduciary duty by HVGM, G.A. Lodging, and HVGG; (2) constructive fraud by HVGM, G.A. Lodging, and HVGG; (3) aiding and abetting the breaches of fiduciary duty and constructive fraud by all Defendants; (4) breach of contract by G.A. Lodging; (5) declaratory relief regarding the implementation of the Portfolio Club against all Defendants except Hyatt Hotels Corporation and ILG; (6) breach of contract by HVGM; (7) breach of contract by HVGM, G.A. Lodging, and HVGG; (8) tortious interference with contract by all Defendants; (9) breach of implied covenant of good faith and fair dealing by G.A. Lodging as well as its Hyatt and ILG alter egos or successors in interest; (10) conspiracy by all Defendants; (11) violation of the Colorado Organized Crime Control Act (COCCA), C.R.S. § 18-17-104(1)-(3) by all Defendants; (12) conspiracy to violate COCCA, C.R.S. § 18-17-104(4) by all Defendants; (13) violation of the Colorado Consumer Protection Act, C.R.S. §§ 6-1-105 and 6-1-703 by all Defendants; (14) Unjust enrichment by all Defendants; and (15) a right to accounting against all Defendants. (D. 54). Defendants argue, among other things, that the Court lacks personal jurisdiction over Defendants ILG and MVWC under Federal Rule of Civil Procedure 12(b)(2). (D. 55).

4

## II.    LEGAL STANDARD

Under Rule 12(b)(2), the Court must determine whether it has personal jurisdiction over a defendant.  Plaintiff bears the burden of establishing personal jurisdiction and must make a prima facie showing that jurisdiction exists.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1070 (10th Cir. 2008).  "A district court has discretion to resolve such a motion in a variety of ways—including by reference to the complaint and affidavits, a pre-trial evidentiary hearing, or sometimes at trial itself."  *Id*. at 1069.  "If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further." *Arrows Up, LLC v. William R. Weiss Enterprises, Inc.*, No. 19-CV-1869-WJM-KLM, 2020 WL 2395639, at *2 (D. Colo. May 12, 2020).  "The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant." *Eim v. CRF Frozen Foods LLC*, No. 18-CV-01404-PAB-KLM, 2019 WL 1382790, at *1 (D. Colo. Mar. 26, 2019).  "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiff['s] favor." *Dudnikov*, 514 F.3d at 1070.


## III.    ANALYSIS

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth*

*Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).  Colorado's long-arm statute extends jurisdiction to the full extent of the Constitution, reducing the analysis to a single due process inquiry.  *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017); *Goodwin v. Bruggeman Hatch*, No. 16-cv-00751-CMA-KLM, 2018 WL 2196057, at *3 (D. Colo. May 14, 2018).  Under the due process clause, the party must have sufficient "minimum contacts" with the state, so that the exercise of jurisdiction would not violate "traditional notions of fair play and substantial justice."  *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "minimum contacts" test may be established by general jurisdiction or specific jurisdiction.  *Otter Prod., LLC v. Phone Rehab, LLC*, No. 19-cv-00206-RM-MEH, 2019 WL 4736462, at *4 (D. Colo. Sept. 27, 2019).

Here, Plaintiff only alleges that the Court has specific jurisdiction over ILG and MVWC. (D. 86, p. 36).  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283-84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Specific jurisdiction is a two-step inquiry: "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Old Republic Ins. Co.*, 877 F.3d at 904 (citations omitted).

A.  Minimum Contacts

To establish minimum contacts with the forum state, Plaintiff must satisfy two requirements:  (1) "a plaintiff must show that a defendant purposefully directed its activities at residents of the forum" and (2) "the litigation must result from alleged injuries that 'arise out of or relate to' those activities."  *PopSockets LLC v. Online King LLC*, No. 19-cv-01277-CMA-

NYW, 2019 WL 7168661, at *3 (D. Colo. Dec. 23, 2019) (quoting *Burger King*, 471 U.S. at 472).

"Mere foreseeability of causing injury in another state is insufficient to establish purposeful

direction." *Old Republic Ins. Co.*, 877 F.3d at 905 (citing *Burger King*, 471 U.S. at 474). "[W]here

the defendant deliberately has engaged in significant activities within a State, . . . he manifestly

has availed himself of the privilege of conducting business there." *Id.* The meaning of purposeful

direction, however, differs with respect to the claims. For tort claims, Plaintiff must show "(a)

an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the

brunt of the injury would be felt in the forum state." *Newsome v. Gallacher*, 722 F.3d 1257,

1264–65 (10th Cir. 2013) (quoting *Dudnikov*, 514 F.3d at 1072) (ellipses omitted). The Tenth

Circuit has adopted a "more restrictive approach," requiring that "the forum state itself must be

the 'focal point of the tort.'" *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 97 (10th Cir.

2012) (quoting *Dudnikov*, 514 F.3d at 1075). For contract claims, the court examines "prior

negotiations and contemplated future consequences, along with the terms of the contract and the

parties' actual course of dealing." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054,

1058 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 479). "A contract alone does not subject

a nonresident defendant to the jurisdiction of the subject forum." *Id.* at 1059. Because Plaintiff,

however, focuses its arguments upon the purposeful availment test for tort claims, this Court will

do so as well. *See TransFirst, LLC v. Brown*, 323 F.R.D. 641, 650 (D. Colo. 2018).

Defendants argue that the Court lacks personal jurisdiction over ILG and MVWC because

Plaintiff has failed to allege any facts that establish that ILG and MVWC purposefully directed

their activities at Colorado and that there are insufficient minimum contacts with Colorado. (D.

55, p. 39). Rather, Defendants argue that Plaintiff' attempts to improperly establish personal

jurisdiction based on the acts of subsidiaries that were later acquired. (*Id.*, pp. 39-40). Plaintiff

argues that it has sufficiently alleged ILG and MVWC has minimum contacts with Colorado and that the Court has specific jurisdiction over the Defendants because ILG and MVWC were "primarily responsible for deciding upon and perpetuating the business plan that is destroying the Hyatt Grand Aspen fractional ownership program." (D. 86, p. 36). Plaintiff alleges that even if ILG and MVWC's actions did not establish a basis for jurisdiction, that the allegations of conspiracy and alter ego would be imputable to them. (D. 86, p. 38). Finally, in the alternative, Plaintiff requests the opportunity to conduct jurisdictional discovery in the event that the Second Amended Complaint does not establish a basis for jurisdiction. (*Id.*, p. 39).

In the present case, Plaintiff alleges that "ILG acquired the Hyatt properties for the purpose of exploiting the Hyatt Grand Aspen and Owners and was responsible for designing the corporate strategy for doing so and supporting those efforts, and that Marriott adopted and continued those corporate strategies and practices when it assumed ownership." (D. 86, p. 37). But Plaintiff does not allege that ILG and MVWC expressly aimed intentional actions at Colorado with the knowledge that the brunt of the injury would be felt in this jurisdiction. *Niemi*, 770 F.3d at 1348.

### 1.    ILG

Defendant ILG is a Delaware limited liability company with its principal place of business in Miami, Florida. (D. 54, p. 10). In October 2014, ILG acquired HVGG. Plaintiff alleges:

> In October 2014, ILG, through its wholly owned subsidiary S.O.I. Acquisition, acquired Hyatt Hotels Corporation's subsidiaries engaged in the shared ownership industry, including Hyatt Residence Club, and the Developer's inventory of more than 200 unsold fractionals as part of a $190 million deal.

(*Id.*, p. 16). Plaintiff further alleges that ILG valued the Resort fractionals because they would provide a "halo" effect for new programs and did not care that associating the Resort with lower-tier programs would have a "so-called horn effect" and would result in the decrease of the Resort

fractionals' value.  (*Id.*, p. 17).  Plaintiff alleges that ILG designed and implemented the Portfolio

club, "paid approximately $10 million for the developer fractionals, and then sold those fractionals

to an entity to transfer them into the Portfolio Trust."  (*Id.*, pp. 18, 35).  In total, Plaintiff alleges

that:

> The ILG acquisition was motivated in part by desire to exploit the "halo effect" created by the Hyatt Grand Aspen and feed the growth of a points program at the expense of those holding a fractional interest there;
>
> ILG "actively thwarted efforts by brokers to sell fractionals," including those at the Hyatt Grand Aspen;
>
> ILG "design[ed] and implement[ed] the Portfolio Club—the new points-based program," and paid approximately $10 million for the developer fractionals at the Hyatt Grand Aspen for inclusion into the Portfolio Trust for use by the Portfolio Club;
>
> ILG forced a merger of the Hyatt Residence Club and Portfolio Club, exploiting the Hyatt Grand Aspen;
>
> ILG failed to stop the harm from the breaches and constructive fraud committed by the fiduciaries, constructed the Portfolio Club, and dismantled and kept dismantled the Hyatt Residence Club, and affiliated the two.

(D. 81, p. 7; D. 54, pp. 16-18, 20-21, 35, 45-46) (alterations omitted).

There is no dispute that ILG's actions were intentional.  Plaintiff, however, does not allege

any facts that demonstrate that ILG targeted their actions at Colorado.  The Tenth Circuit has

clarified that the court must analyze the "defendant's intentions—[that is] the 'focal point' of its

purposive efforts."  *Dudnikov*, 514 F.3d at 1075.  First, Plaintiff alleges that ILG acquired Hyatt's

vacation ownership operations in 2014.  (D. 54, p. 8).  Plaintiff makes clear that the Hyatt

Residence Club was a national club network.  Indeed, Plaintiff alleged:

> Buying a Hyatt Grand Aspen fractional also meant joining the Hyatt Residence Club network . . . A Resort Agreement affiliated the Hyatt Grand Aspen with other Hyatt Residence Club locations as a 'component resort.' An internal exchange program allows Owners to convert some of their Hyatt Grand Aspen time to time at other Hyatt Residence Club resorts."

(D. 54, p. 2).  Similarly, based on the Plaintiff's allegations, the HPC Exchange Agreement also appears to have facilitated a national network.  Plaintiff alleges that, "[t]he HPC Exchange Agreement permits Portfolio Club members to convert their points into so-called legacy points and to use those points to reserve time in the Hyatt Grand Aspen float week periods that previously had only been available to Hyatt Residence Club members."  (*Id.*, p. 20).  Plaintiff alleges that ILG created and deposited its inventory of fractionals into the Trust to create the Portfolio club, but this too does not demonstrate that ILG's activity was directed at Colorado or a specific property based in Colorado.  (*Id.*, p. 4).  Next, Plaintiff alleges that "an ILG salesperson could not get assistance from ILG . . . or the Developer" to sell fractionals, but this too is not specifically targeted at the Hyatt Grand Aspen or Colorado.  (*Id.*, p. 17).  Rather due process requires that the defendant be "haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King*, 471 U.S. at 475).

Plaintiff does allege that ILG valued the Resort fractionals because they would provide a "halo" effect for new programs and that associating the Resort with lower-tier programs had a "so-called horn effect" that resulted in the decrease of Resort fractionals' value.  (D. 54, p. 17).  This Court, however, does not find this to be enough to establish specific jurisdiction.  Plaintiff's theory in the Second Amended Complaint of a "halo effect," (i.e., that ILG would use the Resort as an enticement to sell more point to members at higher prices), and "horn effect" (i.e., that the value Resort fractionals would decrease due to its association with a "lower-tier" program) appears to be speculative.  Plaintiff provides no facts to demonstrate that the Resort is of higher value than other participating HRC Club Resorts based in Colorado, California, Florida, Nevada,

Puerto Rico, Texas, Arizona, and Hawaii.  (D. 54-2, pp. 302-304).  Indeed, Plaintiff alleges that "HVGG effectively devalued the Hyatt Grand Aspen by increasing the number of points allocated to other luxury properties, such as that in Carmel, California."  (D. 54, p. 32).  This suggests that the Resort in Aspen did not provide a "halo" effect.  And even if such theory is true, Plaintiff does not allege that this "horn effect" was specifically targeted at the Resort.  Comparatively, in *Dudnikov*, the Tenth Circuit held that the exercise of specific jurisdiction was appropriate because the plaintiffs alleged sufficient facts to permit an inference that defendants tortuously interfered with the plaintiffs' business by seeking to suspend the plaintiffs' online auction that in turn negatively impacted the plaintiffs' Colorado business.  *Dudnikov*, 514 F.3d at 1073.  Here, Plaintiff has not shown how ILG has acted to specifically interfere with or harm the Resort.  Thus, the Court finds that Plaintiff has not sufficiently alleged that ILG expressly aimed an intentional action at Colorado with the knowledge that the brunt of the injury would be felt in the forum state. Plaintiff, therefore, has not sufficiently alleged that ILG has purposefully availed itself of Colorado or established that ILG has minimum contacts with the forum state.

2.      MVWC

Defendant MVWC is a Delaware corporation with its principal place of business in Orlando, Florida.  (D. 54, p. 10).  MVWC acquired ILG in 2018.  (*Id.*).  Plaintiff alleges that after acquiring ILG, it has "supported and profited from the Portfolio Club and the ongoing diminishment of the Hyatt Residence Club."  (*Id.*, p. 34).  Plaintiff alleges that:

> Marriott has supported and profited from the Portfolio Club and the ongoing diminishment of the Hyatt Residence Club";
>
> Marriott sets corporate priorities, including prioritization of the Portfolio Club over the Hyatt Residence Club;
>
> Marriott knows that increased fees cause harm to owners;

A Marriott employee, Richard Hayward, manages the Hyatt Residence Club;

Marriott is allowing the Hyatt Grand Aspen to be operated for the benefit of the competing Portfolio Club.

(D. 81, p. 8; D. 54, pp. 12-13, 34, 36-38) (alterations omitted).  Again, there is no dispute that MVWC's actions were intentional.  As discussed previously, Plaintiff does not allege any facts that demonstrate that MVWC targeted their actions at Colorado.  And an "assertion of personal jurisdiction based solely on corporate affiliation or stock ownership" is not enough to show minimum contact or establish personal jurisdiction.  *GCIU-Employer Ret. Fund v. Coleridge Fine Arts*, 700 F. App'x 865, 869 (10th Cir. 2017).  Moreover, an allegation that MVWC profits from the Portfolio Club is not enough to establish specific jurisdiction.  The Supreme Court has made clear that "financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State."  *World-Wide Volkswagen Corp.*, 444 U.S. at 299.

While Plaintiff alleges that Hayward manages the HRC, Plaintiff has not alleged any injury by Hayward or that Hayward has taken any action to injure Plaintiff on behalf of MVWC.  "[C]ourts have been unwilling to allow states to assert personal jurisdiction over foreign defendants where the defendant's presence in the forum arose from the unilateral acts of someone other than the defendant."  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998).  Indeed, Plaintiff alleges that Hayward was responsible for "all Resorts in the western United States."  (D. 86-1, p. 2).  Other than alleging that Hayward is employed by MVWC, it has failed to allege that he or MVWC expressly aimed intentional actions at Colorado with the knowledge that the brunt of the injury would be felt in this jurisdiction.  *Niemi*, 770 F.3d at 1348.  Ultimately, Plaintiff has failed to establish that MVWC has minimum contacts with the forum state.

3.      ILG and MVWC

Finally, Plaintiff alleges that both ILG and MVWC:

Stopped expanding the Hyatt Residence Club and allowed it to shrink, indeed deliberately dismantled and kept it dismantled;

Failed to provide requested materials and documents to Owners;

Unlawfully profited from the wrongful conduct; [and]

Are conscious wrongdoers.

(D. 81, p. 8; D. 54, pp. 4-5, 27, 34-36, 38, 45-46) (alterations omitted).  Here, Plaintiff does not allege any facts that demonstrate that ILG and MVWC targeted their actions at Colorado.  *Niemi*, 770 F.3d at 1348.  Plaintiff further alleges that "Defendants and unnamed members of the COCCA conspiracy, including Hyatt Hotels Corporation, then ILG, and now Marriott, working through their subsidiaries, have been diminishing the Residence Club inventory while building up the Portfolio Club."  (D. 54, p. 34).  However, as stated previously, the Supreme Court has mandated that "minimum contacts be based on the defendant's affirmative actions which create a substantial connection with the forum state."  *OMI Holdings, Inc.*, 149 F.3d at 1094 (citations omitted); *see also Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 109 (1987) ("Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant . . . that create a 'substantial connection' with the forum State.").  Plaintiff also alleges that "Defendants and unnamed members of the COCCA conspiracy, including Hyatt Hotels Corporation, HVGG, the Management Company, Grand Aspen Lodging, ILG, and Marriott, also failed to provide material and/or updated documents to Owners over the years; these failures helped perpetuate Defendants' scheme because Owners were operating in the dark."  (D. 54, p. 33).  Plaintiff, however, cannot establish specific jurisdiction over ILG and MVWC through the acts of subsidiaries, especially when as discussed below, it fails to establish jurisdiction based on

13

conspiracy and alter ego. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) ("[A] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity.") (quoting *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974)).

4.      Conspiracy and Alter Ego Allegations

a.   Conspiracy

The remaining Defendants do not challenge Plaintiff's assertion that the Court has personal jurisdiction over them, and therefore Plaintiff argues that the Court has personal jurisdiction over ILG and MVWC as alleged co-conspirators.  Defendants argue that "any forum-directed conduct by the Main Defendants [cannot] be imputed to ILG or MVWC."  (D. 97, p. 19).  The Tenth Circuit has noted that "[t]he existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction." *Hart v. Salois*, 605 F. App'x 694, 699 (10th Cir. 2015) (quoting *Melea, Ltd. v. Jawar SA*, 511 F.3d 1060, 1069 (10th Cir. 2007)).  But in order for personal jurisdiction based on a conspiracy theory to exist, "the plaintiff must offer more than bare allegations that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Id.*

The Tenth Circuit has also "cautioned that 'to hold that one co-conspirator's presence in the forum creates jurisdiction over other co-conspirators threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability.'" *Id.* at 700 (quoting *Melea*, 511 F.3d at 1070).  Consequently, "in addition to pleading a prima facie conspiracy, due process requires that a defendant also have minimum contacts with the forum." *Id.*  "[A] co-conspirator's presence within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards

the forum, or substantial steps in furtherance of the conspiracy are taken in the forum." *Id.*  Here, Plaintiff has not offered more than bare allegations that a conspiracy existed.  But even if Plaintiff had established a prima facie case for conspiracy, it is still undisputed that none of the Defendants are residents of, have their principal place of business in, or are physically present in Colorado. (D. 54, pp. 7-13).  Therefore, this Court finds that Plaintiff has not established personal jurisdiction over ILG and MVWC through its allegations of conspiracy.  *See*, *e,g, Melea, Ltd.*, 511 F.3d at 1070 (10th Cir. 2007) (concluding that defendants' contacts with Colorado were insufficient to create personal jurisdiction over the defendants in that state); *WTI Partners v. Ahn*, No. 18-CV-02269-MEH, 2019 WL 1317761, at *9 (D. Colo. Mar. 22, 2019).

b.   Alter Ego

Plaintiff's allegations also do not support an alter ego theory of jurisdiction. Under an agency theory, Plaintiff has the burden to show that the other Defendants had actual or apparent authority to act on behalf of ILC or MVWC.  *See Tripoli Mgmt., LLC v. Waste Connections of Kansas, Inc.*, No. 09-cv-01767-CMA-KLM, 2010 WL 845927, at *6 (D. Colo. Mar. 9, 2010); *see also Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) (noting that "[a]gency relationships . . . may be relevant to the existence of specific jurisdiction" in that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there").  Plaintiff must "allege facts in its complaint and, if jurisdiction is attacked, present argument in response, which allow the Court to reasonably infer that is has jurisdiction over Defendant[s]."  *Tripoli Mgmt., LLC*, 2010 WL 845927, at *6.  Furthermore, Plaintiff must "make plain the identity of the perceived agent and that of the principal."  *Id.*  However, Plaintiff makes no claim regarding jurisdiction over ILG and MVWC under an agency theory.

Under a theory of alter ego, the Court examines: "(1) whether there was such a unity of interest and lack of respect given to the separate entity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (2) whether adherence to the corporate fiction would sanction a fraud, promote injustice, or lead to an evasion of legal obligations." *U.S. ex rel. Wright v. Cleo Wallace Centers*, 132 F. Supp. 2d 913, 928 (D. Colo. 2000). First, the court considers: "(1) the degree to which corporate legal formalities have been maintained; and (2) the degree to which individual and corporate assets and affairs have been commingled." *Id*. (quoting *National Labor Relations Board v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993)). Next, there must be "an element of unfairness, injustice, fraud, or other inequitable conduct as a prerequisite to piercing the corporate veil." *Id*. Finally, "the showing of inequity necessary to satisfy the second prong must flow from the misuse of the corporate form." *Id*. When determining whether to pierce the corporate veil, courts may also consider:

> (1) The parent corporation owns all or [a] majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1202–03 (D. Colo. 2015) (citations omitted).

When examining the range of evidence which can suggest an alter ego relationship, courts frequently cite: "suspicious timing of the third party's formation, similarity of the judgment debtor and third party's businesses, overlap or close familial relationships between the judgment debtor and third party's management, overlap between the judgment debtor and third party's employees, shared customers, as well as use of the same business address, equipment, attorneys, and registered agents." *Reg'l Dist. Council by & through Parker v. Mile High Rodbusters, Inc.*, No. 13-CV-00214-REB-KLM, 2019 WL 1856743, at *2 (D. Colo. Apr. 24, 2019) (listing cases).

Plaintiff alleges that (1) "Developer Grand Aspen Lodging, HVGG, and Management Company are, and at all relevant times were, controlled, dominated, and operated by Marriott (or, at the relevant times mentioned herein, ILG and Hyatt Hotels Corporation)"; (2) the activities of the three Defendants were an "integral part of the business of Marriott, ILG, and Hyatt, including by the incorporation of the financial results of Developer, HVGG, and Management Company into the financial results of Marriott, ILG, and Hyatt"; (3) "Developer, HVGG, and Management Company each empowered Marriott executives to act as the respective entity's executive officers and directors"; (4) "Marriott (and, previously, ILG and Hyatt) wholly owns all the capital stock of Developer, HVGG, and Management Company"; (5) "a Hyatt and ILG executive at the time, signed several critical documents related to the creation of the Trust," transfers, and Special Warranty Deed; and (5) the "Senior Vice President at Marriott, is tasked with managing the Hyatt Residence Club."  (D. 54, pp. 11-12).

While such control could be viewed as evidence "that the subsidiary is the parent's alter ego," conversely "such control could [also] be evidence that the subsidiary is the parent's agent because the subsidiary is conducting the 'real' business of the parent." *BASF Corp. v. Willowood,*

*LLC*, 359 F. Supp. 3d 1018, 1026 (D. Colo. 2019) (internal citation omitted).  "The objective of either theory is to establish that the parent company has the minimum contacts with the forum necessary to support a finding of jurisdiction." *Id*.  "To exercise personal jurisdiction on a theory of either agency or alter ego, the plaintiff bears the burden of demonstrating a prima facie case." *Id*.  Plaintiff argues that it must only allege "the potential presence of at least some of the factors." *Matthys*, 104 F. Supp. 3d at 1203.  However, in *Matthys*, the plaintiffs' allegations demonstrated that, among other things, the Defendants had committed fraud by operating a fraudulent drug treatment facility.  *Id*.  Here, Plaintiff has not demonstrated that there is an element of unfairness, injustice, fraud, or other inequitable conduct that acts as a prerequisite for piercing the corporate veil.  And as a general rule, "the corporate veil should be pierced only reluctantly and cautiously." *U.S. ex rel. Wright*, 132 F. Supp. at 928 (citation omitted).

Here, Plaintiff has not pled enough facts for this to Court to reasonably infer that it has jurisdiction over ILG or MVWC.  The mere fact that ILG and MVWC may own stock of a subsidiary or exercise a degree of supervision does not rise to the level of "commingled" or demonstrate that the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.  *See id*. at 929 ("Under the facts as alleged, the foundation has no separate existence but for providing financial support to CWC. Further, CWC actually directs the activities of the Foundation, making the conduct of CWC and the Foundation one and the same. Finally, both corporations are managed by roughly the same personnel.").  As such this Court is reluctant to pierce the corporate veil based on Plaintiff's allegations.

B.  Reasonableness

When determining whether exercise of jurisdiction is reasonable, the court examines:  "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's

interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies."   *OMI Holdings, Inc.*, 149 F.3d at 1095.   Plaintiff, however, has failed to carry its burden to show purposeful direction, thus this Court does not need to reach the reasonableness components of the specific jurisdiction analysis for ILG and MVWC.   *See Old Republic Ins. Co.*, 877 F.3d at 910; *Grynberg*, 490 F. App'x 86, 100 n.8 ("Because the plaintiffs fail to establish minimum contacts between the defendants and Colorado, we need not consider whether exercising personal jurisdiction over the defendants would be consistent with "traditional notions of fair play and substantial justice.") (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 n.1 (10th Cir. 1999)).   As such, this Court finds Plaintiff has failed to make a prima facie showing that this Court has specific jurisdiction over ILG or MVWC.

C.  Discovery

Plaintiff requests jurisdictional discovery in order to supplement its opposition.  (D. 86, p. 39).  The Tenth Circuit holds that "'[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.'" *Sizova v. Nat'l Inst. of Standards & Tech*, 282 F.3d 1320, 1326 (10th Cir. 2002) (quoting *Budde v. Ling–Temco Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)).  "In determining whether to allow jurisdictional discovery however, the trial court 'is vested with broad discretion and should not be reversed unless discretion is abused.'"   *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1227 (D. Colo. 2009) (quoting *Budde v. Ling–Temco–Vought, Inc.*, 511 F.2d at 1035).  "[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant."   *Id*.  "Prejudice is present where pertinent facts bearing on the question of jurisdiction

are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (quotation and alteration omitted).

Here, this Court finds that Plaintiff would not be prejudiced as additional discovery is inappropriate. Plaintiff has failed to present a sufficient factual predicate to support its argument that personal jurisdiction can be established through additional discovery. "A district court will not abuse its discretion in denying a request for jurisdictional discovery where there is a 'very low probability that the lack of discovery affected the outcome of th[e] case.'" *Lystn, LLC v. Food & Drug Admin.*, No. 19-CV-01943-PAB-KLM, 2020 WL 248962, at *8 (D. Colo. Jan. 16, 2020) (quoting *Magpul Indus., Corp. v. Blue Force Gear, Inc.*, No. 14-cv-01470-RBJ, 2014 WL 6845851, at *2 (D. Colo. Dec. 4, 2014)). Plaintiff has not argued how it would be prejudiced by the denial of jurisdictional discovery. *See Hood v. Am. Auto Care, LLC*, No. 18-CV-02807-PAB-SKC, 2020 WL 1333091, at *6 (D. Colo. Mar. 23, 2020). Furthermore, Plaintiff fails to identify any facts that could be discovered that would change this conclusion. *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012) ("[T]he burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—[is] on the party seeking the discovery.") (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1190 n.11 (10th Cir. 2010)). Thus, Plaintiff has failed to show that it is entitled to any additional discovery or that it would suffer any prejudice from this Court denying jurisdictional discovery.

## IV.    CONCLUSION

For the foregoing reasons, this Magistrate Judge respectfully recommends that the Defendants' Motion to Dismiss ILG and MVWC pursuant to Federal Rule of Civil Procedure

12(b)(2) be GRANTED, the request for jurisdictional discovery be DENIED (D. 86, p. 39), and the remainder of Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be DEFERRED.  (D. 55).  Given the foregoing ruling, this Court takes under advisement the remainder of Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court is cognizant that this Recommendation, if adopted, may result in motions practice and orders which may make the remainder of the Motion to Dismiss Moot—making it imprudent to address those sections at this time.

Dated at Grand Junction, Colorado this July 2, 2020.

Gordon P. Gallagher
United States Magistrate Judge